STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. ROBERT G. SCHMIDT, DEFENDANT–APPELLANT.

Argued October 26, 1987—Decided May 16, 1988.

*Mark P. Denbeaux* argued the cause for appellant.

*John J. Scaliti,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

The defendant stands convicted of conspiracy to distribute cocaine. The central question in his appeal is whether an appellate court may use that conspiracy conviction as the theory for sustaining a substantive conviction of possession of the drugs without submitting that theory to the jury. The case concerns the criminal liability of defendant as the alleged leader of an operation that transported cocaine from Florida to New York. New Jersey police seized the contraband pursuant to a lawful search of a car traveling on the New Jersey Turnpike. Defendant, who was in New York at the time of these events, was charged with criminal possession of the cocaine and with conspiracy to distribute this controlled dangerous substance, and/or to possess it with the intent to distribute. The prosecuting authority had at least three available theories to establish defendant's liability for criminal possession of the narcotics: (I) liability as a principal under the theory of constructive possession; (II) vicarious liability as an accomplice under *N.J.S.A.* 2C:2–6b(3) for the conduct of the actual possessors; or (III) vicarious liability as a conspirator under *N.J.S.A.* 2C:2–6b(4) for the conduct of the actual possessors.

At trial only the theory of constructive possession of the drugs was presented to the jury to sustain the criminal possession charges against the defendant. There were actually four counts of criminal possession of the drugs: for each of two grades of the narcotics involved, defendant was charged with a count of possession and a count of possession with intent to distribute. The fifth count involved a conspiracy among defendant, the occupants of the car, and others. However, no instruction was given that defendant could be held substantively liable for the conduct of the others under *N.J.S.A.* 2C:2–6b(3) or (4) as an accomplice or co-conspirator.

On appeal the defendant challenged the constructive possession conviction, asserting that he had not the requisite dominion or control of the drugs to sustain that theory of guilt. The

Appellate Division declined to resolve that issue. However, the Appellate Division affirmed the conviction for possession on another theory. The court, noting the jury's conviction of defendant for conspiracy, concluded that the evidence presented at trial would have supported a judgment of conviction under the theory that defendant was vicariously liable as a conspirator for the cocaine possession, although no charge was given on that theory.

We granted certification, 107 *N.J.* 635 (1987), to consider the question whether an appellate court may sustain an otherwise invalid criminal conviction on the basis of a theory of criminal liability not presented to the jury. We hold that a jury in a criminal case·must be appropriately instructed on the theory of liability that is advanced in support of a criminal conviction; absent such instruction, a conviction cannot stand. Accordingly, we reverse the judgment of the Appellate Division on that aspect of the case. We remand the case to the Law Division for resentencing on the conspiracy conviction.

I

The underlying factual dispute in this case is set forth in the reported opinion below. *State v. Schmidt,* 213 *N.J.Super.* 576 (App.Div.1986). Defendant and his wife lived in Tampa, Florida. According to the State, defendant had offered Adrian Athan $1,500 to transport a package of cocaine from Tampa to a Martin Kahn on Long Island, who allegedly was then to resell the narcotics for defendant. On Athan's acceptance, defendant supplied Athan with a half-pound of cocaine, which Athan put in the glove compartment of a car that defendant's wife had rented for the journey. Athan was also given Kahn's Long Island address and telephone number and was instructed to call defendant at that number when Athan arrived on Long Island.

Athan never reached Long Island. The day after Athan allegedly received the narcotics, a State Trooper stopped his car for speeding on the New Jersey Turnpike. After noticing an

open beer can and two cartons of untaxed cigarettes in the car, the police searched Athan and found a small amount of marijuana on his person. Athan and his passenger, Whittaker, then gave the trooper the key to the car's glove compartment, which they said had been locked since they picked up the car; the trooper discovered cocaine in the car's glove compartment. Athan and his passenger were arrested for possession of cocaine.

Athan claimed at first that he did not know that there were drugs in the glove compartment; he said that Schmidt had told him to keep it locked. Athan agreed to cooperate with the police in their investigation of Schmidt. At their instruction he telephoned defendant at Kahn's residence and told defendant that car problems had forced him to stop the car at a service area off the Turnpike. Defendant suggested calling the car rental agency, and apparently attempted, unsuccessfully, to do so. Defendant then called back, told Athan not to contact the highway patrol, and said that he would drive over to New Jersey to help Athan.

When defendant arrived at the service area with Kahn, defendant and Athan removed the luggage from the trunk of the rental car. Nearby troopers then identified themselves and arrested defendant and Kahn. The State charged defendant, his wife, Kahn, Whittaker, and Athan with possession of cocaine, possession of cocaine with the intent to distribute, and conspiracy to distribute cocaine and/or possess cocaine with the intent to distribute. Prior to trial, Athan made a plea agreement with a probationary sentence contingent on his testifying against Schmidt. He then provided the police with the account that he expanded on at trial.

The defendant claimed that in the course of his business as a motor vehicle reconditioner he had hired Athan and Whittaker to drive to New York. The two men were to drop off the rental car there and drive two vans back to Florida for him. Defendant stated that his wife had rented the car because as an airline

employee she could obtain a discount; he also asserted that he flew to New York free on his wife's airline. He denied any knowledge of Athan's possession of the drugs.

The jury convicted defendant of the criminal possession counts and the conspiracy charge. The trial court merged all counts into one count for possession of a pure free base controlled dangerous substance with intent to distribute; the court sentenced Schmidt to a term of twenty years with a minimum term of parole ineligibility of five years. In addition, defendant was ordered to pay a fine of $5,000 and a $25 penalty to the Violent Crimes Compensation Board. The Appellate Division affirmed the judgment. 213 *N.J.Super.* 576.

## II

Preliminarily, we shall address the State's contention that the petit jury need not be instructed on the theory of vicarious conspiratorial liability. This argument arises from the principles of *State v. LeFurge*, 101 *N.J.* 404 (1986), where we held that to sustain a conviction for conspiracy it is not necessary that a grand jury indictment have contained such a charge.

However, the State's argument misreads *LeFurge.* That case was concerned with the procedural fairness of presenting to a petit jury a theory of vicarious liability that had not been made explicit in the indictment charging the defendant with the substantive crime. It has never been thought necessary specifically to charge an individual as an aider and abettor in order to establish his substantive liability as an accomplice, *United States v. Batimana*, 623 *F.*2d 1366, 1370 n. 3 (9th Cir.1980), *cert. denied*, 449 *U.S.* 1038, 101 *S.Ct.* 617, 66 *L.Ed.*2d 500 (citing *United States v. Roselli*, 432 *F.*2d 879, 895 n. 27 (9th Cir.1970), *cert. denied*, 401 *U.S.* 924, 91 *S.Ct.* 883, 27 *L.Ed.*2d 828 (1971)). Thus, in *LeFurge* we thought it not necessary to charge defendant with conspiracy in order to establish vicarious liability as a conspirator. But we never suggested or intended that a defendant could be found vicariously liable as an accom-

plice or co-conspirator in the absence of such a determination by a jury. "[W]e cannot affirm a criminal conviction on the basis of a theory not presented to the jury." *Chiarella v. United States*, 445 *U.S.* 222, 236, 100 *S.Ct.* 1108, 1119, 63 *L.Ed.*2d 348, 362 (1980). To do so would trench on a defendant's sixth amendment guarantee, incorporated as well in our State Constitution, of trial by jury.

The issue presented has arisen in federal prosecutions for illegal drug possession. In *United States v. Rodriguez*, 831 *F.*2d 162 (7th Cir.1987), *cert. denied*, —— *U.S.* ——, 108 *S.Ct.* 1234, 99 *L.Ed.*2d 433 (1988), the government had, as here, at least three potential theories to support defendant's conviction of narcotics possession: (I) constructive possession, (II) aiding and abetting, and (III) vicarious co-conspirator liability. *Rodriguez, supra*, 831 *F.*2d at 168. The government urged the third theory to sustain that conviction. "However, the government explicitly conceded at oral argument that it never offered (and the district court never gave) a *Pinkerton* co-conspirator instruction. This preclude[d] the government from defending the verdict on this ground." *Ibid.* (footnote omitted). (*Nye & Nissen v. United States*, 336 *U.S.* 613, 618, 69 *S.Ct.* 766, 769, 93 *L.Ed.* 919, 925 (1949), summarized *Pinkerton v. United States*, 328 *U.S.* 640, 66 *S.Ct.* 1180, 90 *L.Ed.* 1489 (1946), as holding that "a conspirator could be held guilty of the substantive offense even though he did no more than join the conspiracy, provided that the substantive offense was committed in furtherance of the conspiracy and as a part of it. A verdict on that theory requires submission of those fact issues to the jury." Such elements of the jury charge are now known as *Pinkerton* instructions.) *See also United States v. Disla*, 805 *F.*2d 1340, 1350 (9th Cir.1986) (failure to give *Pinkerton* instruction "precludes our consideration of this theory as a ground for affirmance."). *But see Nye & Nissen v. United States, supra*, 336 *U.S.* 613, 620, 69 *S.Ct.* 766, 770, 93 *L.Ed.* 919, 925–26 (despite failure to submit *Pinkerton* theory of conspiracy liability to jury, conviction for substantive offenses upheld since jury was

correctly charged on broader aider and abettor theory of liability).

Such holdings accord with our view of the "composite guarantee which constitutes the right to trial by jury in a criminal case." *State v. Ingenito*, 87 *N.J.* 204, 211 (1981). "At the heart of the guarantee of a fair trial [are] the 'jury's impartial deliberations upon the guilt of a criminal defendant based solely upon the evidence in accordance with proper and adequate instructions * * *.'" *State v. Collier*, 90 *N.J.* 117, 122 (1982) (quoting *State v. Simon*, 79 *N.J.* 191, 206 (1979)). It is "the nondelegable and nonremovable responsibility of the jury to decide" the question of guilt or innocence in accordance with those instructions. *Ingenito, supra*, 87 *N.J.* at 211. The " 'question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury * * *.'" *Ibid.* (quoting *Bollenbach v. United States*, 326 *U.S.* 607, 614, 66 *S.Ct.* 402, 406, 90 *L.Ed.* 350, 355 (1946)). To this we would add only that the question is not whether a *theory* of guilt may be spelt out of a record, but whether guilt on that theory has been found by a jury. *Chiarella v. United States, supra*, 445 *U.S.* 222, 100 *S.Ct.* 1108, 63 *L.Ed.*2d 348.

In this case, the jury was not charged that it could find the defendant guilty of the possession counts on the basis of vicarious liability as an accomplice or as a conspirator. *See State v. Weeks*, 107 *N.J.* 396, 403 (1987) (one who aids or assists another in commission of crime and shares in intent can be found liable for the actor's crime); *State v. LeFurge, supra*, 101 *N.J.* 404 (conspirator who did not possess stolen goods himself nonetheless liable for their possession). The charge on conspiracy related only to the substantive crime itself and, as noted, embraced as well conspiracy with Kahn and others. Since this jury did not find vicarious guilt under the theory of conspiracy, that theory cannot sustain its verdict of guilt of

possession.[1]

### III

Although we granted certification primarily to consider defendant's sixth-amendment-related right to have a jury decide his guilt, we are invited to consider whether defendant's conviction may nonetheless be sustained on the theory of constructive possession not accepted by the Appellate Division. The point is not without debate, but we decline to make that ruling in the circumstances of this case. For the very aspects of the charge that the State points to as meeting the sixth amendment challenge are the aspects of the charge that diverge from constructive possession as our courts have interpreted the concept. Indeed, in its Supplemental Brief before us the State seeks advantage from the defendant's having acknowledged that the instructions "permitted the jurors to find that [he] possessed the drugs whenever they were in the possession of someone who could be expected to carry out his orders, such as a co-conspirator." It is precisely that blurring of the concepts of possession and conspiracy that underlies the failure of proof of possession in this case.

We recognize that possession has different meanings in different contexts. *Vasquez v. Glassboro Serv. Ass'n, Inc.*, 83 *N.J.* 86, 106–07 (1980). Like the elusive fox in *Pierson v. Post*, 3 *Cai.Cas.* 175 (N.Y.1805), the seemingly simple concept of possession has escaped containment. Generations of law stu-

---

[1]One might ask why the verdict of guilt of conspiracy under Count Five of the indictment does not under the following syllogism confirm the defendant's criminal liability: since the jury found that the defendant was guilty of conspiracy and since conspiracy serves to establish vicarious liability, defendant is thus guilty of the possession of the co-conspirator. The short answer to such simple logic is that the conspiracy charged in Count Five embraced dates and parties beyond the possession counts at issue here; that conviction thus does not establish that the defendant conspired to possess the narcotics on the date in question. The longer answer would be to restate the principles we have recited, i.e., that there is simply no substitute for a jury verdict of guilt.

dents have wondered whether it was Pierson or Post who had gained legal possession of the fox the latter chased and the former found exhausted. The timeless observations of Chancellor Livingston on the rigidity of legal thought bear recalling: "Whatever Justinian may have thought of the matter * * *, we have only to say *tempora mutantur;* and if men themselves change with the times, why should not laws also undergo an alteration?" *Pierson v. Post, supra,* 3 *Cai.Cas.* at 180–81 (Livingston, J. dissenting).

For obviously, as Holmes explains, possession means more than its most literal connotations, else "one could only possess what was under his hand." Holmes, *The Common Law* 236 (1881) [hereinafter *Common Law*]. The jurist gives the example of a man who has left a purse of gold at his distant and isolated country estate; could anyone doubt that a burglar would deprive the absent owner of possession of the purse? Could anyone doubt that the original owner's possession would not end "until the burglar, by an overt act, had manifested his power and intent to exclude others from the purse"? *Common Law, supra,* at 237–38.

What must be distinguished are the possession of an object and the possession of rights with respect to that object. Holmes contends that it is the "ambiguity of language which has led to much confusion of thought. We use the word 'possession' indifferently, to signify [both] the presence of all the facts needful to gain it, and also the condition of him who, although some of the[se facts] no longer exist, is still protected as if they did." *Common Law, supra,* at 236. Thus do the concepts of possession and ownership diverge: the absent squire without present power over his purse is nonetheless viewed in the law as continuing to possess it. The question is always "whether we cannot dispense with even more" of the facts apparently necessary for possession under law. *Id.*

In recent decades, courts have dispensed with many "facts needful to gain" possession of narcotics. To achieve the ends

of justice, they have deemed it necessary to expand the legal concept of possession. As has been explained:

> Quite frequently, the ringleaders or overlords of the narcotics business do not stultify themselves by possession when handlers can be so cheaply hired. Therefore, in an effort to bring a modicum of reality into the picture, the courts in the absence of Congressional action have had to create the doctrine of constructive possession or control.
>
> [*United States v. Bentvena*, 319 *F.*2d 916, 950 (2nd Cir.1963), *cert. denied sub nom.*, 375 *U.S.* 940, 84 *S.Ct.* 345, 11 *L.Ed.*2d 271 (1963).]

Unlike conspiratorial liability, which arises as a function of a defendant's mental processes, liability for constructive possession emerges from a defendant's conduct with regard to the item in question. Some individuals to whom the constructive possession theory clearly applies are: the owner of luggage checked with an airline, *Royer v. State*, 389 *So.*2d 1007 (Fla. Dist.Ct.App.1979), *aff'd*, 460 *U.S.* 491, 103 *S.Ct.* 1319, 75 *L.Ed.* 2d 229 (1983) (*per curiam*); the owner of a footlocker checked on a train, *United States v. Chadwick*, 433 *U.S.* 1, 97 *S.Ct.* 2476, 53 *L.Ed.*2d 538 (1977); the street peddler who uses his female courier to carry drugs for delivery to his customers, *State v. Montana*, 421 *So.*2d 895 (La.1982); and the doctor who arranges to have drugs, ostensibly for a patient, delivered by a pharmacist to his office, *People v. Meyer*, 216 *Cal.App.*2d 618, 31 *Cal.Rptr.* 285 (1963). At the periphery of the theory are cases in which tenants have been charged with constructive possession of drugs found within an apartment they have frequented, *State v. Hults*, 9 *Wash.App.* 297, 513 *P.*2d 89 (1973), or, more generally, where individuals have been so charged on the basis of their simple presence in the area where the contraband was discovered. *United States v. Stephenson*, 474 *F.*2d 1353, 1355 (5th Cir.1973) (mere presence in area where narcotic is discovered or association with person who does control drug or property where drug is located is insufficient to support finding of possession).

Closer to the center of the constructive possession spectrum are cases in which a group of persons have worked together to maintain custody and control of drugs. *United States v. More-*

*no*, 649 *F.*2d 309 (5th Cir.1981) (one who is an integral part of narcotics distribution operation may be found to be in possession, although goods had left his garage and were en route to intended sale). Courts have discussed the theory of constructive possession in terms of a showing of "ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed." *United States v. Salinas–Salinas*, 555 *F.*2d 470, 473 (5th Cir.1977). They have extended this framework on a case-by-case basis by referring to the actor's "having a working relationship or a sufficient association with those having physical custody of the drugs so as to enable him to assure their production, without difficulty, to a customer as a matter of course," *United States v. Jones*, 308 *F.*2d 26, 30 (2nd Cir.1962) (en banc) (citing *United States v. Hernandez*, 290 *F.*2d 86 (2nd Cir.1961)), or by his

hav[ing] the ultimate control over the drugs. He need not have them literally in his hands or on premises that he occupies but he must have the right (not the legal right, but the recognized authority in his criminal milieu) to possess them, as the owner of a safe deposit box has legal possession of the contents even though the bank has actual custody.

[*United States v. Manzella*, 791 *F.*2d 1263, 1266 (7th Cir.1986).]

To some extent, then, "[t]he constructive possession theory of criminality is not strictly a factual theory. Instead, it is partly a legal fiction which is utilized to impose criminality on those who are shown to have a sufficiently close 'legal' connection to the locus where drugs are found * * *." *Hults, supra*, 513 *P.*2d at 96 (Pearson, C.J., dissenting); *see also* W. LaFave and A. Scott, *Substantive Criminal Law* § 3.2, 281–82 (1986) ("Constructive possession, which is simply a doctrine used to broaden the application of possession-type crimes to situations in which actual physical control could not be directly proved, is often described in terms of dominion and control. It is not uncommon, however, for constructive possession to be more broadly defined to include as well circumstances in which the defendant had the ability to reduce an object to his control." (footnote omitted)). From this we may infer that there is a

considerable degree of latitude within which courts may seek to expand the legal fiction of constructive possession in order to achieve the ends of justice. Our inquiry will thus concern not only what has heretofore been decided in New Jersey about constructive possession but also how this State's courts should proceed in the future.

## IV

We would ordinarily look first to New Jersey's Code of Criminal Justice, *N.J.S.A.* 2C:1-1 to 98-4. Our Code, like counterpart codes based on the Model Penal Code (MPC) does not seek to define the word "possession." Rather, the concept of possession is predicated on the Code's fundamental prerequisite for all criminal liability: the voluntariness of the act. *N.J.S.A.* 2C:2-1a. The Code states unambiguously that "[p]ossession is an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." *N.J.S.A.* 2C:2-1c. This analysis thus differentiates criminal from innocent possession. *See State v. Labato,* 7 *N.J.* 137, 148 (1951) ("possession" in criminal and penal statutes to be construed strictly, as signifying "intentional control and dominion").

In the absence of a statutory definition of the act of possession, our Code assumes that pre-Code concepts of possession would survive. Under pre-Code law,

> possession can be either actual or constructive. For constructive possession, which can be jointly shared by several persons, "[p]hysical or manual control of the proscribed item is not required as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists." *State v. Brown,* 80 *N.J.* 587, 597 (1979). Criminal possession signifies "intentional control and dominion, the ability to affect physically and care for the item during a span of time," *State v. Davis,* 68 *N.J.* 69, 82 (1975), accompanied by knowledge of its character, *State v. Reed,* 34 *N.J.* 554, 557 (1961).
>
> [*State v. Shipp,* 216 *N.J.Super.* 662, 664-65 (App.Div.1987).]

In *State v. Butler*, 89 *N.J.* 220 (1982), we determined that although "significant changes in the language and grading of the Code have marked a clean break with the past[,] * * * [t]he most reasonable reading of the language is that the actor must actually possess or be in control of a deadly weapon when he threatens its immediate use." 89 *N.J.* at 226 (reducing from first degree robbery to second degree robbery offense of defendant who had placed hand in his pocket to simulate gun; robbery statute then in effect interpreted not to incorporate simulated threat of weapon). More recently, we held that a flare gun on a car dashboard established possession of a weapon within the meaning of the Graves Act, reasoning that

> possession of a firearm for purposes of the Graves Act includes not only actual possession but constructive possession that the defendant is able to convert practically immediately to actual possession. * * * [A] Graves Act sentence will be imposed only where defendant's ability to exercise actual control over the firearm is imminent.
>
> [*State v. Stewart*, 96 *N.J.* 596, 604–05 (1984).]

These concepts of possession involve the "capacity" to maintain control of and the "ability to affect" the item during a span of time.

Here, we would have to ascribe constructive possession of an item to an individual who neither actually possessed it nor was shown to be able to assert direct control over it. His control over the contraband would be predicated on his co-conspirator's control over it. This theory is more expansive than the concept of constructive possession heretofore recognized in New Jersey, which required that defendant, by direct or indirect means, have physical control over the object constructively possessed. *See Shipp, supra,* 216 *N.J.Super.* at 664–65. Under this theory, Schmidt could have been found to possess the cocaine when it was seized from Athan, even though at that time Schmidt lacked such physical control over the contraband.

The trial court itself did not intend to sustain the charge of Schmidt's constructive possession simply on the showing that he had indirectly possessed the contraband through Athan; rather, the court intended that Schmidt have had a concurrent

capacity to control the cocaine. The court acceded to defense counsel's argument that its charge "says constructive possession is when you have the drug in—not in your physical control but subject to your control with the clear *capacity to exercise control*" (emphasis added), but denied Schmidt's motion for a new trial, reasoning that

> the argument ignores entirely that the defendant Schmidt was in fact present with the co-defendant Athan and the rental car in Woodbridge, Middlesex County, New Jersey, on April 28, 1984. The State's evidence was not only that the defendant Schmidt had the capacity but ownership according to the co-defendant Adrian Athan. The defendant Schmidt actually entered the vehicle and attempted to start it; but for the intervention of the State Police which was unknown to the defendant Schmidt he would have in fact succeeded in bringing the conspiracy to its ultimate and intended conclusion.[2]

However, when Schmidt arrived at the Turnpike rest-stop, the State had already removed the drugs from the vehicle and substituted a look-alike substance. Hence, we are inclined not to disturb the Appellate Division's implicit holding that the verdict equated constructive possession with an indirect possession that did not evidence capacity to control the goods. Under our law constructive possession is a function of the relationship and conduct of parties, and not primarily of the state of mind of related actors such as accomplices or conspirators.

This is not to say that a charge of constructive possession may not be premised on a defendant's control of a companion who actually possesses the contraband. Perfect illustrations of such constructive possessors are the street-peddler who uses a confederate as the courier but always maintains control over

---

[2]Admittedly, the court's resolution embraced two aspects of defendant's argument: that he could not have been guilty of a conspiracy to commit an offense in New Jersey and could not have been guilty of constructive possession. Before us, the defendant conceded that an actor may be guilty of a conspiracy to commit an offense in New Jersey even though the actor is outside this State's boundaries. *See also United States v. Blackston,* 547 *F.Supp.* 1200, 1206 (S.D.Ga.1982) (a party may have constructive possession of object across jurisdictional boundaries); *cf. N.J.S.A.* 2C:5–2a (definition of conspiracy).

that person, *see State v. Montana, supra,* 421 *So.*2d at 898 n. 3, and the drug overlord whose authority in the "criminal milieu" is regarded as secure enough to "assure the[ ] production [of requested narcotics], without difficulty, to a customer as a matter of course." *United States v. Jones, supra,* 308 *F.*2d at 30.

But this case did not proceed on such a theory. While the proofs may well sustain Schmidt's liability for possession as an accomplice or conspirator with Athan, they were not related by the charge to the kind of control over the cocaine that our cases and examples contemplate. According to the State, Athan and Schmidt had but a casual relationship: Athan worked on Schmidt's boat. Athan's version of his responsibility was:

Q. And did you receive any specific instructions from Bob Schmidt prior to leaving Florida [with the cocaine]?

A. Only to the mention of—mention of calling when I arrived in Long Island, to call him at the number that I had on a piece of paper. I don't recall. I never used the number before and I just don't recall the number.

Q. Was there any mention—any instruction given to you should you happen to get stopped by the police?

A. No, sir.

Q. In addition to taking the cocaine to New York were you supposed to do anything else in New York?

A. No, sir. Not at that time.

Since Schmidt could have been, and was, found guilty of possession, it may seem a procedural nicety to quibble over the theory of guilt submitted to the jury. But there is simply no substitute for a jury verdict of guilt. Even when the proofs admit of no verdict but guilt, a court may not enter the verdict itself. *State v. Collier, supra,* 90 *N.J.* 117. "[A]ppellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial." *Dunn v. United States,* 442 *U.S.* 100, 107, 99 *S.Ct.* 2190, 2194, 60 *L.Ed.*2d 743, 751 (1979).

Our holding will not in any sense weaken law enforcement's ability to counter the threat of drugs in our society.[3] On the contrary, the Code has strengthened law enforcement's ability in this area. The Code grades the conspiracy by the nature of the offense contemplated. *N.J.S.A.* 2C:5-4a. When the conspiracy verdict establishes the offense contemplated, the co-conspirator may be punished as severely as the principal for that offense.

---

[3]We have carefully considered the authorities cited by our dissenting members and believe that our disposition does not contradict those cases. We note, for example, that in *United States v. Dupuy,* 760 *F.*2d 1492, 1500 (9th Cir.1985), the defendant's conviction for possession was as well sustained by proof that he "aided and abetted" the possession of another. *United States v. Brantley,* 733 *F.*2d 1429, 1433–35 (11th Cir.1984), *cert. denied,* 470 *U.S.* 1006, 105 *S.Ct.* 1362, 84 *L.Ed.*2d 383 (1985), principally challenged the venue of the defendant's conspiracy trial in Georgia, but there was proof that a co-conspirator helped unload the smugglers' vessel in South Carolina and took a truckload of the marijuana into Georgia. In *United States v. Martorano,* 709 *F.*2d 863 (3rd Cir.), *cert. denied,* 464 *U.S.* 993, 104 *S.Ct.* 486, 78 *L.Ed.*2d 682 (1983), the court sustained a conviction of constructive possession where the defendant had been given a key to a van in which narcotics were located, although police surveillance would have prevented him from having the vehicle moved. Even then, in his dissent Chief Judge Gibbons noted that "the majority ha[d] journeyed into fantasy land." 709 *F.*2d at 873. In *United States v. Raper,* 676 *F.*2d 841, 848–49 (D.C.Cir.1982), there was an aiding and abetting basis for the verdict of possession with intent to distribute. In *United States v. Valentin,* 569 *F.*2d 1069, 1070 (9th Cir.1978), the defendant actually received the goods from a postal drop in Alaska. In *United States v. Staten,* 581 *F.*2d 878, 887 (D.C.Cir.1978), defendant was within several feet of the contraband in an apartment raided by police; indeed, some narcotics were found in the defendant's jacket pocket.

As noted, we agree that there are circumstances in which a defendant's authority in his "criminal milieu" is such that the defendant can be regarded as in constructive possession of the drugs. *United States v. Manzella,* 791 *F.*2d 1263, 1266 (7th Cir.1986). "[H]e who can *assure* the delivery of a good controls it." *Id.* at 1267. But when this authority over the contraband is not present, the constructive possession charge may be set aside. Hence, we have indicated our agreement with such cases as *United States v. Moreno,* 649 *F.*2d 309, 313 (5th Cir.1981), which held that constructive possession may be sustained when it is shown that an actor had "instruct[ed] and monitor[ed] the progress of the men who had actual possession of the [contraband]" and had "enjoyed a close

Hence, we believe that there is no need further to expand the concept of constructive possession. The drafters of our Code thought the concept of possession so simple that no definition was needed. This reflects only that "possession" is "a common term used in everyday conversation that has not acquired any artful meaning." *Substantive Criminal Law, supra,* § 3.2, 281–82 (quoting *Kramer v. United States,* 408 *F.*2d 837 (8th Cir.1969)). As the Code has dealt more broadly with the other theories of vicarious liability (e.g., no overt act is required to establish certain conspiracies, *N.J.S.A.* 2C:5–2d; a unilateral act will suffice to establish a conspiracy, *N.J.S.A.* 2C:5–2d), we may safely infer that the Legislature saw no need for the "fictionalization" of the concepts of possession to establish substantive liability for a possessory offense.

We should strive to keep our concepts of constructive possession simple and straightforward. Under our Code's developed systems of vicarious liability for accomplices and conspirators there is ample authority to convict one such as defendant for the crime of possessing, or of possessing with intent to distribute, narcotics. Any problems of proof that may derive from a varied approach to the question of a defendant's liability for possession despite the lack of evidence of actual possession are ones "that the [State] could eliminate by exercising adequate care" in framing the case. *Rodriguez, supra,* 831 *F.*2d at 168.

As noted, there may arise factual situations in which a defendant's dominion and control over the narcotics throughout their transit can be substantiated by such proof of relationship and conduct of the parties that a jury could infer the defendant's continued capacity to exercise control over those items. These proofs were not offered here. Since the jury charge failed to instruct the jury on the vicarious liability of a conspira-

and continuous working relationship with those * * * who may have had actual physical possession of the [drugs]."

tor as the basis for guilt, the constructive possession counts cannot be sustained on that basis.

The Appellate Division judgment is reversed and the matter is remanded to the Law Division for further proceedings in accordance with this opinion. As noted, the defendant stands convicted of conspiracy to distribute drugs. He may be sentenced on that count. He may not, however, be sentenced on a theory of guilt not given to the jury.

STEIN, J., dissenting.

The Court reverses defendant's four possession-based convictions, holding that the Appellate Division erred in relying on a theory of vicarious liability not charged by the trial court, and concluding that the proofs were legally insufficient to establish constructive possession. *Ante* at 272. The Court recognizes that narcotics possession and distribution offenses may be prosecuted on a constructive possession theory where the defendant controls "a companion who actually possesses the contraband," *id.* at 272, including situations where, as here, the companion is transporting the drugs from one locale to another. See *id.* at 275. However, the majority holds that the State's evidence in this case demonstrated only a "casual relationship" between Schmidt and Athan, and thus fell short of "the kind of control over the cocaine that our cases and examples contemplate." *Id.* at 273. In my view, the evidence of defendant's control over the narcotics was sufficient to submit to the jury the counts charging possession and possession with intent to distribute. Thus, while I am in full agreement with the Court's treatment of the vicarious liability issue, I would affirm defendant's convictions.

The Court's thoughtful discussion of constructive possession uncovers the doctrine's legal and philosophical foundations, *ante* at 266–70, and concludes that "there is a considerable degree of latitude within which courts may seek to expand the legal fiction of constructive possession in order to achieve the

ends of justice." *Id.* at 269–70. As put aptly by one court, "[i]t would be odd if a dealer could not be guilty of possession, merely because he had the resources to hire a flunky to have custody of the drugs." *United States v. Manzella,* 791 *F.*2d 1263, 1266 (7th Cir.1986). Consistent with this notion the Legislature has expressly extended the reach of this State's criminal possession and distribution statutes to include more than just those defendants found to have actually possessed a controlled dangerous substance. *See N.J.S.A.* 24:21–19 ("unlawful * * * to possess or have under his control with intent to manufacture, distribute, or dispose * * *"); *N.J.S.A.* 24:21–20 ("unlawful * * * to possess, actually or constructively, a controlled dangerous substance * * *"). Prior to this case we had dealt with the constructive possession doctrine in *State v. Brown,* 80 *N.J.* 587, 597 (1979), where we held that in a prosecution for narcotics possession and distribution, constructive possession could be established by proof of "an intention to exercise control over [the drugs] manifested in circumstances where it is reasonable to infer that the capacity to do so exists."

The Court's discussion also demonstrates the fact-sensitive nature of the constructive possession inquiry. Whether or not a specific defendant possessed the requisite dominion and control over the drugs through another person is likely to turn on facts and circumstances peculiar to each case. *See ante* at 268–69 (citing cases exemplifying wide range of potential constructive possession settings). In such a context, it is unwise for courts to attempt to identify specific factual conditions that are necessary as a matter of law to sustain a finding of control. Such efforts are likely to result in artificial rules that will "inevitably invade the traditional province of the jury to assess the significance of circumstantial evidence, and to determine whether it eliminates all reasonable doubt as to whether the accused had that power [to control the drugs]." *United States v. Staten,* 581 *F.*2d 878, 883 (D.C.Cir.1978). Such an invasion of the jury's province is threatened here by the Court's suggestion that in drug shipment cases, constructive possession may be

submitted to the jury only in certain categorical circumstances, as in the case of a defendant who is a drug overlord. *Ante* at 273, 274–75 n. 3. The Court's very effort to isolate such "categories" of cases emphasizes that dominion and control, the hallmarks of constructive possession, are fact-sensitive concepts, and therefore far more appropriate for determination by a jury.

The role of an appellate court in reviewing the sufficiency of the evidence requires that we view the State's evidence in its entirety, along with all favorable inferences that could reasonably be drawn therefrom, *e.g., State v. Brown, supra,* 80 *N.J.* at 591, and ask, in the context of a conviction founded on constructive possession, "whether the fact-finder [could] reasonably conclude from the proof that the accused likely had some appreciable ability to guide the destiny of the drug." *United States v. Staten, supra,* 581 *F.*2d at 883; *see also id.* at 884; *Wheeler v. United States,* 494 *A.*2d 170, 172 (D.C.App. 1985). State and federal courts agree that the requisite dominion and control over the contraband may be found even though the evidence reveals that it was exercised only "through others," *United States v. Raper,* 676 *F.*2d 841, 847 (D.C.Cir.1982), and have consistently sustained possessory convictions based on proofs of control over those in actual possession. *See United States v. Brantley,* 733 *F.*2d 1429, 1433–34 & n. 8 (11th Cir.1984) (defendant, "by virtue of his dominion and control," constructively possessed shipment of drugs in actual possession of codefendant hired to pick up the drugs in South Carolina and drive them to new hiding spot in Georgia), *cert. denied,* 470 *U.S.* 1006, 105 *S.Ct.* 1362, 84 *L.Ed.*2d 383 (1985); *United States v. Martorano,* 709 *F.*2d 863, 869–71 (3rd Cir.) (defendant constructively possessed drugs in van when paid agent, subject to his control, took actual possession of van and prepared to drive away), *cert. denied,* 464 *U.S.* 993, 104 *S.Ct.* 486, 78 *L.Ed.*2d 682 (1983); *Archer v. Commonwealth,* 225 *Va.* 416, 303 *S.E.*2d 863, 864 (1983) (constructive possession established where defendant arranged drug sale and directed someone else to retrieve and

transfer drugs); *State v. Wooten*, 55 *N.C.App.* 530, 286 *S.E.*2d 635, 639 (1982) (same); *cf. United States v. Manzella, supra,* 791 *F.*2d at 1266–67 (reversing possessory conviction where evidence showed defendant attempted to arrange major drug sale but had no control over drugs possessed by supplier).

Indeed, unlike the facts before the Court today, in many cases convictions premised on constructive possession have been sustained even though the defendant never had, or never intended to have, actual possession of the narcotics. *E.g., United States v. Dupuy,* 760 *F.*2d 1492, 1500 (9th Cir.1985) (conviction sustained where defendant arranged drug transaction and helped negotiate value of cocaine to be traded for marijuana); *United States v. Martorano, supra,* 709 *F.*2d at 865–71; *United States v. Moreno,* 649 *F.*2d 309, 313 (5th Cir.1981) (defendant never in actual possession constructively possessed drugs by control over paid agents); *United States v. Raper, supra,* 676 *F.*2d at 847–48 (defendant possessed drugs in actual possession of helper by virtue of control over disposition); *United States v. Valentin,* 569 *F.*2d 1069, 1071 (9th Cir.1978) (defendant constructively possessed drug shipment when brother delivered it to air freight office addressed to him); *cf. State v. Kimbrough,* 109 *N.J.Super.* 57, 64 (App.Div.1970) (constructive possession of stolen goods established where defendant "intentionally obtains a measure of control or dominion over the custody of the stolen property even though physical possession is in another").

The evidence in this case established that the defendant paid an intermediary to transport his cocaine from Florida, through New Jersey, to a destination in New York where defendant was waiting for him. Defendant supplied the intermediary with a rental car, and was to have provided him with a plane ticket back to Florida after the drugs had been delivered. After New Jersey police officers stopped the car and discovered the drugs, defendant was called and traveled to New Jersey in order to rescue the shipment and his couriers. In my view, these proofs justified submitting to the jury the question whether defend-

ant's capacity to exercise control over the cocaine was sufficient to sustain convictions for possession.[1]  I would affirm defendant's convictions.

GARIBALDI, J., joins in this opinion.

*For reversal* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK and O'HERN—5.

*For affirmance* —Justices GARIBALDI and STEIN—2.

---

[1]The trial court instructed the jury that a person is in constructive possession of something when "although not in actual possession[,] with knowledge of its character [he] knowingly has both the power and the intention at a given time to exercise control over [it] through another person or persons."