718 A.2d 721

STATE OF NEW JERSEY, PLAINTIFF, v. WALI WILLIAMS, HERRON FAISON AND TOMA WILLIAMS, DEFENDANTS.

Superior Court of New Jersey
Law Division
Essex County

Decided June 15, 1998.

*Linda Childs–Swift*, Assistant Prosecutor, for plaintiff (*Patricia Hurt*, Essex County Prosecutor).

*Carl C. Belgrave*, for defendant Wali Williams.

*John L. Whalen, Jr.*, Assistant Deputy Public Defender, for defendant Herron Faison (*Michael Marucci*, Public Defender for Essex County).

*Edward A. Jerejian*, for defendant Toma Williams (*Dell'Italia, Affinito, Jerejian and Santola*, attorneys).

WEISSBARD, J.S.C.

Whether there can be accomplice liability for a simple possessory offense, and if so, under what circumstances, is the deceptively simple, but apparently unresolved, issue raised in this case. This opinion constitutes an amplification of a ruling made during the course of jury deliberations.

The facts are uncomplicated. The State's proofs established that Shane Connor, a juvenile, was selling drugs for defendant, Herron Faison. Connor failed to remit to Faison $145 from his drug sales. As a result, Faison, with the assistance of defendants Wali Williams and Toma Williams, forced Connor into a car and

took him on an involuntary excursion to Branch Brook Park, during which there were threats made to Connor's well-being. In the course of this outing at the park, Faison and Toma Williams got out of the car, at which point, Wali Williams, who was the driver, turned to talk to Connor, who was in the back seat. Connor saw what he believed to be the outline of a gun handle in Williams' waistband, although the gun was never exhibited and there was no reference to it. Connor was thereafter returned to his home upon his promise to pay the debt, but he ultimately did not do so.

Based upon these facts, the three defendants were charged with kidnapping, first degree robbery, unlawful possession of a weapon and possession of a weapon for an unlawful purpose.[1] The court initially charged the jury on kidnapping and the lesser offenses of criminal restraint and false imprisonment, first degree robbery (based on attempt) and the lesser offenses of second degree robbery and theft, as well as the weapons offenses. The Model Charge on accomplice liability was also given without any limitation on the offenses to which it was applicable. The court also delivered the Model Charge on possession, including constructive and joint possession.

During deliberations, the jury posed the following question:

[a]s to the charge of unlawful possession of a weapon, does being in the same car as someone with a weapon also constitute unlawful possession? If not, please define accomplice as it relates to the charge of unlawful possession and as it relates to possession of a weapon for an unlawful purpose.

As a result of the jury's question, the court was required to focus on the propriety of the accomplice liability charge as it related to the two possessory offenses involving the weapon. For the reasons which follow, the court concludes that accomplice liability has no meaningful place in the jury's deliberations on the weapons counts in addition to and apart from the liability which might result from constructive possession on the part of the non-

---

[1] There were other charges, not pertinent to the issue herein, arising out of an incident on the following day.

weapon bearing passengers in the vehicle, defendants Faison and Toma Williams.

The issue does not appear to have been addressed directly in any reported decision in New Jersey, yet it surely must be a common problem, given the prevalence of multi-defendant cases, such as this, in which crimes are committed as to which accomplice liability is properly charged but wherein only one defendant may be carrying a weapon.[2] The most direct reference to the problem may be found in a passing observation in *State v. Cook,* 300 *N.J.Super.* 476, 489, 693 *A.*2d 483 (App.Div.1996). There, the court was considering a charge which failed to provide an adequate accomplice instruction in a multi-defendant case with lesser included offenses, as required by *State v. Bielkiewicz,* 267 *N.J.Super.* 520, 632 *A.*2d 277 (App.Div.1993). After concluding that a reversal was required on those convictions with respect to which the faulty instruction was applicable, Judge Long made the following observation:

> [a]s to possession of a weapon for an unlawful purpose, the accomplice charge was, in fact, given. Whether accomplice liability even applies to a possessory weapons offense is doubtful. In such a case, the state must show that defendant possessed the weapon with a purpose to use it unlawfully. N.J.S.A. 2C:39–4(d). Possession may be actual or constructive and two or more persons may jointly share actual or constructive possession of a weapon. *State v. Latimore,* 197 *N.J.Super.* 197, 210, 484 *A.*2d 702 (App.Div.1984), *certif. denied,* 101 *N.J.* 328, 501 *A.*2d 978 (1985). Once the jury is instructed as to these principles, which is what occurred here, the giving of an erroneous accomplice charge is, at most, harmless.
>
> [*Cook, supra.,* 300 *N.J.Super.* at 489–90, 693 *A.*2d 483.]

As a result, the court in *Cook* was never required to answer the question which it posed concerning the relationship between accomplice liability and simple possessory offenses, such as weapon possession. However, in this case the jury's question forces the court to address the issue directly.

*N.J.S.A.* 2C:2–6 provides, in pertinent part, as follows:

---

[2] It is possible that in many such cases the prosecutor does not attempt to name all the defendants on the weapon count, as was done here. If so, the problem may arise solely from an over-ambitious charging document.

a. A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

b. A person is legally accountable for the conduct of another person when: ...

(3) [h]e is an accomplice of such other person in the commission of an offense; ....

c. A person is an accomplice of another person in the commission of an offense if:

(1) [w]ith the purpose of promoting or facilitating the commission of the offense; he

(a) [s]olicits such other person to commit it;

(b) [a]ids or agrees or attempts to aid such other person in planning or committing it; ....

■ Thus, the accomplice must not only have the purpose that someone else engage in the conduct which constitutes the particular crime charged, *State v. Weeks*, 107 *N.J.* 396, 401–03, 526 *A.2d* 1077 (1987), but the accomplice must also share in the same intent which is required for commission of the substantive offense. *Bielkiewicz, supra.*, 267 *N.J.Super.* at 528–30, 632 *A.2d* 277 (citing *State v. Fair*, 45 *N.J.* 77, 211 *A.2d* 359 (1965) and *State v. Madden*, 61 *N.J.* 377, 294 *A.2d* 609 (1972)). These principles are likewise embodied in the Model Charge on accomplice liability.

■ While these principles are well settled, how do they relate to possessory offenses? *N.J.S.A.* 2C:2–1(c) provides that possession constitutes a voluntary act punishable under the Code "if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." In adopting the Code, the quoted definition of possession was intended to be "in accord" with pre-code law, *State v. McCoy*, 116 *N.J.* 293, 299, 561 *A.2d* 582 (1989), which had defined possession as signifying an "intentional control and dominion, the ability to affect physically and care for an item during a span of time." *State v. Davis*, 68 *N.J.* 69, 82, 342 *A.2d* 841 (1975); *State v. Labato*, 7 *N.J.* 137, 148, 80 *A.2d* 617 (1951). In addition, the concept of constructive possession imposes liability where there is no physical control of a prohibited item but "there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists." *State v. Brown*, 80 *N.J.* 587, 597, 404 *A.2d* 1111

(1979). These concepts, as well as that of joint possession, where two or more persons exercise possession jointly at the same time, are all embodied in the Model Charge on possession.

*McCoy* explored at length the concept of possession as it relates to a passenger in a stolen vehicle. 116 *N.J.* at 296, 561 *A.*2d 582. The Court there approved an inference of possession arising from a passenger's presence in a stolen car "when that presence is coupled with additional evidence that the passenger knew the driver, knew that the vehicle was stolen and intended to use the vehicle for his or her own benefit and enjoyment." *Id.* at 303, 561 *A.*2d 582. From those facts a jury might infer "that the passenger had both the intention and the capacity to control the stolen vehicle," thus supporting a finding of constructive possession. *Ibid.* Further, simply preparing to enter such a vehicle under the given circumstances could support a finding of an attempt to possess the car. *Id.* at 304, 561 *A.*2d 582.

In *State v. Schmidt*, 110 *N.J.* 258, 540 *A.*2d 1256 (1988), the Court returned again to the concept of constructive possession, in the factual context of the liability of an alleged leader of a drug trafficking operation for cocaine seized from one of his couriers intercepted on the New Jersey Turnpike while transporting the drugs from Florida to New York. After an extensive review of the decisional law on the subject, the Court found "a considerable degree of latitude within which courts may seek to expand the legal fiction of constructive possession in order to achieve the ends of justice." *Id.* at 269-70, 540 *A.*2d 1256. Thus, "liability for constructive possession emerges from a defendant's conduct with regard to the item in question." *Id.* at 268, 540 *A.*2d 1256. It is "a function of the relationship and conduct of the parties, and not primarily of the state of mind of related actors such as accomplices or conspirators." *Id.* at 272, 540 *A.*2d 1256. While noting that New Jersey precedent regarding constructive possession required a defendant to have, by either direct or indirect means, "physical control over the object constructively possessed," the Court had no hesitation in enlarging the concept to cover certain situations

where the individual charged "neither actually possessed [the item] nor was shown to be able to assert direct control over it." *Id.* at 271, 540 *A.*2d 1256. Without reviewing those examples in detail, it suffices here to say that the Court clearly approved an expansion of the previously recognized use of constructive possession, primarily in the area of drug trafficking. *Id.* at 268–69, 272–73, 540 *A.*2d 1256.

As a result, *McCoy* and *Schmidt,* taken separately or together, provide courts with ample room to impose criminal liability under the traditional notions of possession and constructive possession as now interpreted, without resort to strained theories of accomplice liability on the part of one actor for possession of an item, such as a weapon, by another actor merely because the two are engaged in some type of joint criminal venture.[3] The present case presents an excellent example of the conceptual morass into which courts may be led. How can we logically hold Defendants Faison and Toma Williams responsible as accomplices for possession of the gun tucked in the waistband of co-defendant Wali Williams? Stated differently, how can we find that Faison, for example, not only had the purpose that Wali Williams engage in the prohibited conduct (unlawful possession of a weapon), but that he shared the knowing intent of Williams in having that possession? Stating the problem forces one to recognize its lack of logical support and to also realize how it may serve as a source of confusion for a jury already inundated with a whole series of unfamiliar legal principles. Our overriding concern should be to clear the air for the jury as much as possible, rather than to pollute it with redundant and unnecessary instructions.

This is not to say, however, that an actor may not be liable as an accomplice for certain crimes where the only one

[3] Just recently, in *State v. Hurdle,* 311 *N.J.Super.* 89, 96, 709 *A.*2d 298 (App.Div.1998), the Appellate Division made note of the fact-sensitive nature of constructive possession determinations, requiring an examination of the totality of circumstances.

armed is another actor. Thus, an accomplice "may be guilty of armed robbery even though he did not personally possess or use the firearm in the course of the commission of the robbery," as long as "the accomplice had the purpose to promote or facilitate that crime, namely, robbery with the use of a firearm." *State v. White,* 98 *N.J.* 122, 130, 484 *A.*2d 691 (1984).[4] And other examples readily come to mind in which accomplice liability would be appropriate, such as where one defendant is actually instrumental in obtaining the gun for his confederate, such as by providing the money for its purchase and directing the buyer to a seller of weapons. In such a situation the non-possessor could readily be said to have aided the actual possessor in obtaining possession of the weapon by virtue of specific, affirmative action which directly led to the other's possession. Of course, if the "accomplice" actually physically provided the gun to the other, one would not need to go beyond the traditional concept of possession to find liability, since the accomplice would have had actual possession for some period however brief, before turning it over to the other.

Some cases have indeed talked of "aiding and abetting" the possession of another. *See Schmidt, supra.,* 110 *N.J.* at 274 n. 3, 540 *A.*2d 1256. In *United States v. Dupuy,* 760 *F.*2d 1492, 1500 (9th Cir.1985), one Tercero had agreed to purchase marijuana from an informant. After the drugs had been delivered to Preece, Tercero's confederate, Tercero and the informant met at the home of Preece, at which point Tercero participated in discussions concerning payment of cocaine for the marijuana. *Ibid.* Although affirming Tercero's conviction for possession of the drugs and for aiding and abetting Preece's possession, the court did so simply upon a finding of a joint venture from which a jury could rationally infer that Preece "had both knowledge of and control over the

---

[4] One can also be subject to the Graves Act by virtue of being an accomplice to a crime where the weapon is in the possession of a confederate. *State v. Mancine,* 124 *N.J.* 232, 259–60, 590 *A.*2d 1107 (1991); *State v. Wooters,* 228 *N.J.Super.* 171, 178–79, 549 *A.*2d 441 (App.Div.1988); *State v. Gantt,* 195 *N.J.Super.* 114, 478 *A.*2d 422 (App.Div.1984).

contraband in the possession of a companion." *Ibid.* As a result of that constructive possession, Tercero and Preece had joint possession of the cocaine. *Ibid.*

*United States v. Raper*, 676 *F.*2d 841 (D.C.Cir.1982), is more closely in point, and more troubling. In that case Raper and Childs were engaged in a "team" sale of narcotics on a District of Columbia street. *Id.* at 843–44. Raper apparently would speak with the customer and receive money at which point he would communicate with Childs, who would then hand over the drugs to the customer while Raper stood at some distance removed. *Ibid.* The court had no problem finding constructive possession on the part of Raper with respect to the drugs possessed by Childs. *Id.* at 847–48. However, the majority went on to uphold Raper's conviction of possession with intent to distribute based upon his aiding and abetting Childs' possession by knowingly participating in the crime through his arranging the sale, receiving the money and "counseling" Childs. *Id.* at 849–50. In reaching that conclusion the court broadly construed the federal aiding and abetting statute. 18 *U.S.C.* § 2, and the cases applying it. *Id.* at 848–49. In pertinent part, that statute penalizes as a principal one who "aids, abets, counsels, commands, induces or procures" the commission of an offense. *Ibid.* The classic statement of that rule was set out by Judge Learned Hand in *United States v. Peoni*, 100 *F.*2d 401, 402 (2d Cir.1938): "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'"

Prior New Jersey law tracked the language of the federal statute, *N.J.S.A.* 2A:85–14, and it appears that the "new" language in 2C:2–6(c) did not intend any change in the scope of accomplice liability. *New Jersey Penal Code, Vol. II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission* at p. 57 (1971). Thus, any disagreement with the holding in *Raper* cannot be on the basis of differences in the statutory language.

The dissent in *Raper* would have held that while there was sufficient evidence connecting Raper with the intent to distribute on the part of Childs, that associational activity could not also supply the necessary element of possession. *Raper, supra.*, 676 *F.*2d at 853–55 (Edwards, J., dissenting). The dissent found support in *United States v. Jackson*, 526 *F.*2d 1236 (5th Cir.1976). In that case, Jackson introduced one co-defendant, Bischoff, to another co-defendant, Thurman. *Id.* at 1237. Thurman and Bischoff then sold cocaine to undercover DEA agents. *Ibid.* Jackson, however, never exercised dominion or control over the cocaine, although, in the language of *Peoni*, "he was associated with the criminal routine/venture, participated in it as in something he wished to bring about, and sought by his action to make it succeed." *Ibid.* The court first noted that Jackson could not be convicted of possession with intent to distribute on a constructive possession theory since he never "exercised any measure of dominion or control over the contraband." *Ibid.* The court went on to reject the government's assertion that Jackson's conviction of aiding and abetting possession with intent to distribute could be "supported by evidence sufficient for a conviction of aiding and abetting distribution and/or sale." *Id.* at 1237–38. While noting the "superficial appeal" of the government's position, since possession is an element in either distribution or sale, the court found that the rationale simply did not apply to an aiding and abetting charge. *Id.* at 1238. Although there was ample evidence that Jackson did aid and abet the *distribution* there was no evidence that he participated in the *possession* aspect of the transaction and therefore his conviction on that charge could not be sustained. *Ibid.*

To the extent that the majority opinion in *Raper* is at odds with the reasoning of *Jackson*, this court finds *Jackson* more logical and persuasive. To be sure, the cases are far from uniform, particularly where narcotics transactions are involved. Courts have struggled with accessorial liability in a variety of such situations. *See e.g., People v. Manini*, 79 *N.Y.*2d 561, 584 *N.Y.S.*2d 282, 594 *N.E.*2d 563 (1992). Often they appear to have focused

insufficiently on the possession aspect of the offense, upholding possession with intent to distribute convictions on the basis that a defendant "facilitated" the transaction in some manner, *see e.g., Wagers v. State,* 810 *P.*2d 172, 175 (Alaska App.1991); *McNulty v. State,* 655 A.2d 1214, 1216 (Del.1995), or participated in the venture. *United States v. Wiebold,* 507 *F.*2d 932, 934 (8th Cir. 1974). Indeed, at least one court has expressly declined to follow *Jackson, supra.,* albeit under a broader view of what constituted accessory conduct in that particular state. *State v. Galisia,* 63 *Wash.App.* 833, 822 *P.*2d 303, 306 (1992). While the present case does not require the court to directly address the issue of accomplice liability in the context of a possession with intent to distribute charge, candor compels the observation that the underlying principle is no different in such a case than in simple weapon possession. In either situation the focus must be on the act of possession and whether the particular defendant is an accomplice with respect to another's possession under 2C:2–6.

In *People v. Ballard,* 133 *Misc.*2d 584, 507 *N.Y.S.*2d 572 (Sup.Ct. 1986), the court was faced with a motion to dismiss an indictment for criminal weapon possession against three passengers in an automobile where the weapon was locked in the car's trunk. There was evidence that all the defendants were planning to rob a store not far from where the car was located at the time of their arrest. *Id.* at 585. The prosecution argued that the proximity of the vehicle they occupied to the place they planned to rob demonstrated that all three knew the gun was in the trunk and therefore all three "knowingly possessed the gun both constructively and as accomplices to one another." *Id.* at 586.

The trial court, however, found that the argument rested "upon an impermissible elision between two separate and distinct elements necessary to sustain a charge of criminal possession," these elements being "evidence of possession, whether actual or constructive, personal or accessorial," together with "evidence of scienter, that is, actual knowledge by each of the defendants that the gun indeed was in their possession." *Ibid.* While the evi-

dence of the planned robbery sufficed to provide the element of knowledge, it did not demonstrate the dominion and control required to prove possession. *Ibid.* With respect to possessory crimes, where a defendant "is not discovered in actual personal possession, but rather is held accountable because of his involvement with others" liability is typically to be analyzed in terms of constructive possession rather than accessorial liability. *Id.* at 588. Evaluating the evidence in terms of accepted notions of constructive possession the court found insufficient evidence of control and dismissed that count of the indictment. *Id.* at 590. In doing so, Judge Uviller provided the negative answer to the question posed by Judge Long in *Cook, supra.,* bringing us full circle in this discussion.

In the end, the propriety of an accomplice liability instruction for a simple possessory offense is fact-sensitive. It is not to be eschewed in all cases. On the other hand, it should not be routinely given in all cases either. If other crimes charged require an accomplice instruction, the jury should be told clearly whether it applies to the possessory offenses or not. Obviously, if the court is not explicit a reviewing court would have to assume that the jury applied the instruction to all of the offenses in the indictment.

Such is precisely what the jury would have understood in this case from the court's initial charge. The perceptive question posed by the jury in its deliberations has now caused the court to reexamine its position and conclude that accomplice liability has no useful role to play in the context of the weapons offenses. Accordingly, the jury will be so reinstructed.