693 A.2d 483

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. PEDRO E. COOK, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 11, 1996—Decided November 19, 1996.

478

Before Judges LONG and SKILLMAN.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Jodi L. Ferguson*, Assistant Deputy Public Defender, of counsel and on the brief).

*Peter Verniero*, Attorney General, attorney for respondent (*Debra A. Owens*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

LONG, P.J.A.D.

In 1994, Pedro E. Cook was charged in Bergen County Indictment S–117–94 as follows: with purposeful and/or knowing murder, in violation of *N.J.S.A.* 2C:11–3(a)(1), (2) (Count One); felony murder, in violation of *N.J.S.A.* 2C:11–3(a)(3) (Count Three); first degree robbery, in violation of *N.J.S.A.* 2C:15–1 (Count Four); possession of a weapon, a tree branch or other wooden objects, for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4(d) (Count Five); and attempted theft of movable property, in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:20–3 (Count Six).[1] Tried separately from his co-defendants, Cook was convicted of purposeful and knowing murder; possession of a weapon for an unlawful

---

[1] Co-defendants Gerald C. Vaughan and Brian S. Basile were jointly charged in counts three, four, and five. Vaughan was jointly charged in count one and Basile was individually charged in count two with being an accomplice to knowing and purposeful murder. Vaughan was convicted on all counts and we affirmed those convictions. *State v. Vaughan*, Docket No. A–4752–94T4 (App. Div. October 8, 1996). Basile entered a plea of guilty to an amended count of aggravated manslaughter and also to a count of armed robbery.

purpose; and attempted theft of moveable property. The jury acquitted Cook on the charges of felony murder and robbery. On January 13, 1995, the trial judge sentenced Cook to a thirty-year custodial term with thirty-years of parole ineligibility on the murder conviction and to concurrent five year custodial terms on the remaining convictions. Appropriate Violent Crimes Compensation Board (VCCB) penalties were also imposed.

Cook appeals, contending that the following errors warrant reversal:

*POINT I:*

THE TRIAL COURT'S ERRONEOUS ACCOMPLICE LIABILITY CHARGE REQUIRES A REVERSAL OF DEFENDANT'S MURDER CONVICTION. (Not Raised Below).

A. The Judge Failed To Instruct The Jurors That Defendant Could Have Been Found Guilty Of The Lesser Included Offenses Of Aggravated Manslaughter Or Manslaughter, On The Basis Of His Own Reckless Mental State, Even If He Was An Accomplice And The Principal Had The Mental State For Murder.

B. The Jury Instructions On Accomplice Liability Were Incorrect In That They Potentially Caused The Jury To Believe That Merely Silently Assenting To And Approving Of Another Person's Criminal Behavior Makes One An Accomplice.

*POINT II:*

THE TRIAL JUDGE'S FAILURE TO ADEQUATELY INSTRUCT THE JURY ON WHAT EVIDENCE IN THE CASE WOULD SUPPORT A FINDING OF "UNLAWFUL PURPOSE" IN THE CHARGE OF POSSESSION OF A WEAPON WITH PURPOSE TO USE IT UNLAWFULLY AGAINST THE PERSON OF ANOTHER DEPRIVED THE DEFENDANT OF HIS RIGHT TO A FAIR TRIAL. *U.S. CONST.* AMENDS. VI AND XIV; *N.J. CONST.* (1947), ART. I, PAR. 9. (Not Raised Below).

*POINT III:*

THE COURT ERRED IN CHARGING THE JURY ON FLIGHT, AND THE CHARGE PROVIDED WAS LEGALLY INADEQUATE. (Partially Raised Below).

*POINT IV:*

DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT AND THE STATE CONSTITUTION BY THE FAILURE OF THE TRIAL COURT TO INSTRUCT THE JURY THAT THE DEFENDANT'S PRE–ARREST SILENCE WAS RELEVANT ONLY AS TO HIS CREDIBILITY. (Not Raised Below).

*POINT V:*

THE INTRODUCTION INTO EVIDENCE OF S–32; S–34, AND ALL ELEVEN COLOR AUTOPSY PHOTOGRAPHS, WAS IMPROPER AND CONSTITUT-

ED A DENIAL OF DEFENDANT'S RIGHT TO A FAIR TRIAL. *U.S. CONST.* AMENDS. VIII, XIV; *N.J. CONST.* (1947), ART. I, PAR. 1.

*POINT VI:*

THE PROSECUTOR ENGAGED IN A COURSE OF MISCONDUCT THROUGHOUT THE TRIAL WHICH DEPRIVED DEFENDANT OF THE RIGHT TO A FAIR TRIAL. *U.S. CONST.* (1947) ART. 1, PARS. 9, 10.

   A. The Prosecutor Improperly Sought To Inflame The Jury By Eliciting Sympathy For The Victim.

   B. The Prosecutor Improperly Cross-examined Defendant By Forcing Him to Characterize Key State Witnesses As Liars.

   C. The Prosecutor Improperly Vouched For the Credibility of His Witnesses.

   D. The Prosecutor Improperly Told The Jury That The Defendant Had "One Year To Put Together His Story."

*POINT VII:*

THE CONVICTION OF POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE MUST MERGE WITH THE CONVICTION FOR MURDER.

We have carefully reviewed this record in light of these contentions and have concluded that the arguments raised in Points II, III, IV, V and VI are entirely without merit and that an opinion with respect to them would have no precedential value. *R.* 2:11–3(e)(2). We have also determined that the trial judge's erroneous accomplice instruction compromises defendant's right to a fair trial and that a reversal on that basis is in order.

The facts of the case are essentially as follows: On September 4, 1993, the victim, George Landau, a fifty-two year old homeless man was murdered in Hackensack during a robbery which went awry. Earlier that day, he had made withdrawals from his bank account at an A.T.M. machine. He had been robbed in the past and was known in the homeless community as an easy mark. On the day in question, a group of homeless persons, including Karen Moore, Teddy Jones, Paul Piro and Rob Decker, had congregated at Columbus Park, near the Hackensack River, for a barbecue. Karen Silver was also at the park that day, attempting to catch crabs from the river. A short time later, Cook, Vaughan and Basile arrived at the park. According to the witnesses, Vaughan was extremely agitated and jumpy, punching and kicking objects. All three were making "karate chop" motions. According to

Moore, one of the three (whom she could not identify) stated that they were going to "fuck someone up" and "let's do this now."

Shortly thereafter, Cook crossed the street and entered the woods where the victim was located. Vaughan had a short conversation with Basile after which he climbed a telephone pole and looked across the street into the woods. When Vaughan climbed down the pole, he also crossed the street and went into the woods. Silver then started to speak with Basile. At this point, she testified that she heard the victim's cries from across the street, as well as the sounds of a scuffle. Moore related the same story. Basile smiled at these sounds and kept talking, telling Silver at one point, in response to her concerns, that Cook and Vaughan had promised him that they would not kill the victim. Presumably this conversation took place while they were planning the robbery.

Silver subsequently crossed the street and observed Vaughan jabbing the victim with a tree branch while Cook kicked and punched the victim's legs. She also observed a knife wound on Vaughan's back, apparently inflicted by the victim. Silver testified that she then observed Cook hold the victim's legs while Vaughan lifted a railroad tie over his head and dropped it onto the victim's chest. Cook then ripped the victim's pants to his ankles, searching for money and commented "[a]ll I got was eight dollars." Cook and Vaughan then dragged the victim to a gully near the river. At this time, Silver left the woods and ran across the street. She then observed Vaughan leave the woods, retrieve a wooden barricade from the road, and re-enter the woods.

After the incident, Cook, Vaughan, Basile, and Silver walked to Hackensack Medical Center. Silver testified that she went along with them because she was afraid for her safety and wanted them to believe that she would not report what she had seen. While on route to the hospital, the group was stopped by Officer Anthony Ferraioli of the Hackensack police. The officer inquired about Vaughan's injuries, asked if they desired an ambulance, and, after

Vaughan declined and stated that he had merely fallen on a stick, allowed the group to proceed.

After arriving at the hospital, Cook and Basile left to purchase beer at a nearby delicatessen. In the delicatessen, the two men were quite jocular, laughing and joking with the clerk. In the meantime, Silver approached a security guard at the hospital and told him that the victim had stabbed Vaughan.

Officer Ferraioli subsequently arrived at the hospital in response to a potential stabbing. Upon arriving, he noticed Cook and Basile outside drinking beer and was approached by Silver, who told him that the victim had stabbed Vaughan. He then went inside and spoke to Vaughan, who told him that he had been stabbed after playing a basketball game for money. Detective Frederick Puglisi then arrived at the hospital and spoke to Vaughan. Vaughan first told Puglisi that he had been injured by falling on a sharp stick, but then told the detective that he had been stabbed by an unknown assailant after playing a game of basketball. Puglisi also interviewed Silver, who told him that there had been a problem between the victim and Vaughan near the park area.

The officers subsequently spoke with Cook, whom they asked to sit in the patrol car. Cook voluntarily complied and sat on the passenger side of the vehicle. Thereafter, a report was broadcast over the officer's handheld radio that a body had been found near the river in the park area. Cook then attempted to place a set of keys found on the seat into the car's ignition and was arrested. The State maintained that Cook attempted to steal the unmarked car after hearing the broadcast through the open car window. Cook claimed that the windows were closed and that he was merely trying to insert the keys in the ignition to open them.

The victim's body was found by police near the banks of the Hackensack River with a barricade nearby. Cook was later interviewed by Investigator Richard Barbato. According to Barbato, Cook first denied involvement but then admitted that he had

watched Vaughan beat the victim and had himself hit the victim "once or twice."

At trial, Cook testified on his own behalf, essentially denying that he ever struck the victim or robbed him. He also denied telling the police he had done so.

The prosecution presented additional testimony from the medical examiner, Dr. Maryann Clayton, to rebut Cook's version of the events. Dr. Clayton testified that there were no injuries found on the victim indicating that he was choked with a stick as Cook had described. She also testified that, had such an event taken place, there would have been physical injuries to the victim's neck. She denied that the injury to the victim's clavicle could have been caused by the events which defendant had described.

After considering the evidence, the jury found Cook guilty of purposeful and/or knowing murder, possession of a weapon for an unlawful purpose, and attempted theft of movable property (the patrol car). It is against this backdrop that we examine the trial court's instruction on accomplice liability.

The trial judge explained to the jury that the theory of accomplice liability was applicable to each of the crimes with which defendant was charged, except for theft of an automobile. Within his instructions on accomplice liability, he stated:

A person is an accomplice of another person in the commission of a crime when with the purpose of promoting or facilitating the commission of the crime he aids, agrees or attempts to aid such other person in planning or committing it. That's the law.

So, the State must prove beyond a reasonable doubt that someone else, Gerald Vaughan, committed the crime of murder, robbery, felony murder, possession of a weapon for unlawful purposes. The State must prove beyond a reasonable doubt that Mr. Cook acted purposely to promote, to bring it into being, to advance it or to launch it or facilitate it, to make it easier to accomplish, that is, the crimes that I have just mentioned.

The third element the State must prove beyond a reasonable doubt with accomplice liability is that the defendant aided, meaning he assisted, supported or supplemented the efforts of another; or agreed to aid, meaning he encouraged by promise of support the efforts of another.

Now, if you find that the defendant, Mr. Cook, purposely aided another person in the commission of the crimes you must consider him as if he committed the crime himself.

However, one cannot be held to be an accomplice unless you find as a fact that he possessed the same criminal state of mind, that is purposefulness, that is required to be proved against the person who actually committed the crime, the actor. An accomplice may be convicted on proof of the commission of a crime or of his complicity thereto or therein though the person who ... it is claimed committed the crime has not been prosecuted or convicted, or has been convicted of a different offense or degree of offense or has an immunity from prosecution or conviction, or has been acquitted, it makes no difference.

The judge then proceeded to define the elements of murder, aggravated manslaughter, and manslaughter for the jury as well as the remainder of the charges.

After deliberating for almost one hour, the jury sent a question concerning "the difference between the three degrees of count one [the murder charge]." At that time, the prosecutor asked the judge to re-explain accomplice liability to them regarding each charge, but defense counsel objected on the basis that only the question asked should be answered. The judge agreed with defense counsel and only re-explained murder and the lesser included offenses. The next morning, the jury specifically asked for a re-explanation of accomplice liability. The judge repeated his original instruction.

Near the end of the second day, the jury again asked the judge to repeat his instructions on accomplice liability. He complied, essentially reiterating his original charge. This time, however, he also added:

Accomplice liability. The State has the burden of proving beyond a reasonable doubt on an accomplice liability theory that someone else, maybe Gerald Vaughan, or somebody else other than this defendant committed the crime of murder, or felony murder, robbery, or possession of a weapon for an unlawful purpose, anyone of the counts. And when I say murder I'm also including the aggravating manslaughter and reckless manslaughter also included into that, in that crime, those are crimes.

Cook argues that these accomplice liability instructions did not adequately explain to the jury that it could find him guilty as an accomplice to the lesser included offenses of aggravated manslaughter or manslaughter even if it believed that Vaughan had

committed purposeful and/or knowing murder. As such, he contends that the principles set forth in *State v. Bielkiewicz*, 267 *N.J.Super.* 520, 632 *A*.2d 277 (App.Div.1993), were violated. We agree.

"[W]hen a prosecution is based on the theory that a defendant acted as an accomplice, the court is obligated to provide the jury with accurate and understandable jury instructions regarding accomplice liability even without a request by defense counsel." *State v. Bielkiewicz, supra*, 267 *N.J.Super.* at 527, 632 *A*.2d 277; *accord State v. Weeks*, 107 *N.J.* 396, 410, 526 *A*.2d 1077 (1987). To gain a conviction based on accomplice liability, it is "essential that [the accomplice and principal] shared in the intent which is the crime's basic element." *State v. White*, 98 N.J. 122, 129, 484 A.2d 691 (1984) (quoting *State v. Fair*, 45 *N.J.* 77, 95, 211 *A*.2d 359 (1965)); *Model Jury Charges* (Criminal), § 2C:2–6— Liability For Another's Conduct (revised May 22, 1995). However, each participant in a crime is guilty only to the degree of his own intent. *State v. Fair, supra*, 45 *N.J.* at 95, 211 *A*.2d 359.

When an accomplice has been charged with an offense of a different degree than the principal or when the jury may find him/her guilty of a lesser included offense, the judge's instructions must "carefully impart[ ] to the jury the distinctions between the specific intent required for the grades of the offense." *State v. Bielkiewicz, supra*, 267 *N.J.Super.* at 533, 632 *A*.2d 277 (quoting *State v. Weeks, supra*, 107 *N.J.* at 410, 526 *A*.2d 1077). *See State v. Tucker*, 280 *N.J.Super.* 149, 153, 654 *A*.2d 1014 (App.Div.1995) (reversing defendant's conviction for robbery where the trial judge failed to give the jury instructions which incorporated the facts of the case and which explained the possible difference in intents between the principal and the accomplice concerning robbing the victim).

These principles are particularly important where multiple participants engage in a violent attack with the potential for differing states of mind. In such cases, "[t]he liability of each

participant for any ensuing crime is dependent on his own state of mind, not on anyone's else's." *State v. Bridges,* 254 *N.J.Super.* 541, 566, 604 *A.*2d 131 (App.Div.1992). *See also State v. Weeks, supra,* 107 *N.J.* at 410, 526 *A.*2d 1077; *State v. White, supra,* 98 *N.J.* at 129, 484 *A.*2d 691. In *State v. Fair,* the Supreme Court stated:

> If both parties enter into the commission of a crime with the same intent and purpose each is guilty to the same degree; but each may participate in the criminal act with a different intent. Each defendant may thus be guilty of a higher or lower degree of crime than the other, the degree of guilt depending entirely upon his own actions, intent and state of mind.
>
> [*State v. Fair, supra,* 45 *N.J.* at 95, 211 *A.*2d 359.]

The effect of the instructions in this case was to obfuscate the possibility that Vaughan purposely committed the murder, and that Cook, while a participant in the specific action which resulted in the victim's death, did not intend the victim to be killed or to suffer serious bodily harm. While there is no question but that Cook played a part in the attack and robbery of the victim, even the State theorized in openings and summation that what occurred here was a robbery gone awry when Vaughan was unexpectedly stabbed by the victim. Plainly up until that point, neither Vaughan nor Cook had taken action which by its very nature was murderous or which revealed a desire to cause the victim serious bodily harm. Witnesses said Vaughan was "jabbing him with a stick" while Cook "kicked and punched him in the legs." On the evidence presented, and the state's own theory of the case, a jury might well have concluded that the murder was not planned but was precipitated by the stabbing of Vaughan who then became enraged and formulated the intent to kill or seriously injure the victim. In order to determine levels of culpability, the jury needed a detailed explanation of accomplice liability theory tied into the facts. In exploring the issue, the jury should have been told to specifically consider whether Cook was holding the victim's legs to facilitate Vaughan's attack but without the intent to cause serious injury or death. The jury should likewise have been advised in unequivocal terms that, depending on its view of the evidence, it could decide that the liability of Cook was different

from that of Vaughan because each had a different state of mind. No such explanation was given.

The State argues that the fact that Cook was tried alone ameliorates any problem with the jury instruction. We disagree. In this case, Gerald Vaughan, the prime mover, was as present in the courtroom as if he had been physically there himself. Indeed, the repeated jury questions as to accomplice liability plainly showed that the jurors understood that they were to assess Cook's guilt in connection with Vaughan's vicious fatal blow to the victim. Whether they actually comprehended how that responsibility was to be carried out is doubtful.

The State also argues that Cook's "all-or-nothing" defense (i.e., his denial of participating at all in the beating of the victim) eliminated the possibility that a faulty accomplice liability charge could have prejudiced him. This is not so. Once the jury rejected Cook's story as to his non-complicity in the events leading up to the victim's death, which it obviously did, it was required to apply correct legal principles to assess Cook's liability under the State's own version of the events.

Further, the State contends that the accomplice charge in this case is distinguishable from that in *Bielkiewicz* because the charge in *Bielkiewicz* did not contain the language given here that an accomplice may be convicted of a crime although the principal has been convicted of a different offense or degree of offense. Again, we disagree. Not only was this a mere fleeting allusion in an otherwise confusing charge, but the *Bielkiewicz* opinion specifically addresses this model charge language and declares that it does not adequately explain to the jury how it might go about finding an accomplice guilty of a different offense or degree of offense than the principal. *State v. Bielkiewicz, supra*, 267 *N.J.Super.* at 531–32 n. 2, 632 *A.2d* 277.

"[C]lear and correct jury charges are essential for a fair trial." *State v. Brown*, 138 *N.J.* 481, 522, 651 *A.2d* 19 (1994); *accord State v. Concepcion*, 111 *N.J.* 373, 379, 545 *A.2d* 119 (1988).

A judge must explain the fundamental principles of law which control the case and the questions that the jury must determine. *Ibid.* (quoting *State v. Green*, 86 *N.J.* 281, 287–88, 430 *A.*2d 914 (1981)). "Only when the charge as a whole meets these standards can it survive challenge on appeal." *State v. Whitted*, 232 *N.J.Super.* 384, 391, 557 *A.*2d 327 (App.Div.1989).

Where, as here, a defendant does not object to the jury charge at trial, the applicable standard of review is that of plain error, which is an error clearly capable of bringing about an unjust result. *R.* 1:7–2; *R.* 2:10–2; *State v. La France*, 117 *N.J.* 583, 594, 569 *A.*2d 1308 (1990); *State v. Worlock*, 117 *N.J.* 596, 612, 569 *A.*2d 1314 (1990); *State v. Hock*, 54 *N.J.* 526, 538, 257 *A.*2d 699 (1969), *cert. denied*, 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970). This is a stringent standard. However, erroneous jury instructions on matters material to a jury's deliberations are ordinarily "presumed" to be reversible error. *Brown, supra,* 138 *N.J.* at 522, 651 *A.*2d 19; *State v. Grunow*, 102 *N.J.* 133, 148, 506 *A.*2d 708 (1986). Such errors are poor candidates for rehabilitation as harmless. *Brown, supra,* 138 *N.J.* at 522, 651 *A.*2d 19 (citations omitted); *State v. Weeks, supra,* 107 *N.J.* at 410, 526 *A.*2d 1077 (citations omitted). We are satisfied, as was the panel in *Bielkiewicz,* that the accomplice instruction given here was inadequate to guide the jury in the course its deliberations should take regarding the murder charge. As such, it was capable of producing an unjust result. We thus reverse Cook's conviction for purposeful and knowing murder.

The same result does not attach to the other convictions. The accomplice instruction was not given with respect to the theft of moveable property count, thus obviating the possibility that that instruction negatively impacted on that conviction.

As to possession of a weapon for an unlawful purpose, the accomplice charge was, in fact, given. Whether accomplice liability even applies to a possessory weapons offense is doubtful. In such a case, the state must show that defendant possessed the weapon with a purpose to use it unlawfully. *N.J.S.A.* 2C:39–4(d).

Possession may be actual or constructive and two or more persons may jointly share actual or constructive possession of a weapon. *State v. Latimore*, 197 *N.J.Super.* 197, 210, 484 *A*.2d 702 (App.Div. 1984), *certif. denied*, 101 *N.J.* 328, 501 *A*.2d 978 (1985). Once the jury is instructed as to these principles, which is what occurred here, the giving of an erroneous accomplice charge is, at most, harmless.

Moreover, *Bielkiewicz* has no applicability to a charge of possession of a weapon for an unlawful purpose because that crime does not include the possibility of conviction for lesser offenses. Further, as a matter of logic, the *Bielkiewicz* errors in the accomplice charge on murder could not have affected the possessory weapons conviction because, even if Cook merely intended to rob the victim and not to seriously injure or kill him, the requisite unlawful purpose for conviction on the possession offense would nevertheless have been established.

We turn finally to the merger issue raised in Point VII of defendant's brief with which we agree. The state has acknowledged that no broader unlawful purpose than use of the weapon against the victim in the murder can be gleaned from the evidence of record and thus has conceded the need for merger of the convictions on those two counts. Because we have reversed the murder conviction, the error is of no moment. However, on the retrial, if defendant is again convicted of the murder and weapon offenses, and no broader unlawful purpose for possessing the weapon is established, the convictions should merge. *See State v. Diaz*, 144 *N.J.* 628, 639–40, 677 *A*.2d 1120 (1996).

The conviction for knowing and purposeful murder is reversed and remanded for retrial. The convictions for possession of a weapon for an unlawful purpose and theft of moveable property are affirmed.