871 A.2d 692 (2005)
377 N.J. Super. 48
STATE of New Jersey, Plaintiff-Respondent,
v.
Raymond L. FRANKLIN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 1, 2005.
Decided April 22, 2005.
*693 Yvonne Smith Segars, Public Defender, attorney for appellant (Ruth Bove Carlucci, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Attorney General, attorney for respondent (Ian S. Clement, Deputy Attorney General, of counsel and on the brief; Carol M. Henderson, Assistant Attorney General, and Jeanne Screen, Deputy Attorney General, of counsel, on the supplemental brief; Teresa A. Blair, Deputy Attorney General, on the supplemental brief).
Before Judges STERN, WECKER and GRAVES.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant and co-defendants Andre Cutler and Andrew Johnson were indicted for attempted murder, N.J.S.A. 2C:2-6, 2C:5-1 and 2C:11-3 (count one), second degree aggravated assault, N.J.S.A. 2C:2-6 and 2C:12-1b(1) (count two), third-degree aggravated assault on a corrections officer, N.J.S.A. 2C:2-6 and 2C:12-1b(5) (count three), second-degree attempted escape, N.J.S.A. 2C:5-1 and 2C:29-5 (count nine), and third-degree possession of implements for escape, N.J.S.A. 2C:29-6a(2) (count ten). The co-defendants were also charged in other counts apparently based on their conduct during the attempted escape.[1]
Defendant was tried alone and convicted on all counts. The trial judge thereafter granted the State's motion to sentence defendant to an extended term as a persistent offender, N.J.S.A. 2C:44-3a, and defendant was sentenced to fifty years in the custody of the Commissioner of Corrections, with a twenty-five year period of parole ineligibility, on the attempted murder. A ten-year consecutive sentence was imposed on count nine. The conviction on second-degree aggravated assault on count two was merged into the conviction for attempted murder on count one, and concurrent sentences were imposed on the *694 remaining counts. The aggregate sentence of sixty years imprisonment, with a twenty-five year parole ineligibility term, was made consecutive to a sentence defendant was then serving.
On this appeal, defendant argues:
POINT I DEFENDANT'S CONVICTION FOR FIRST DEGREE ATTEMPTED MURDER MUST BE REVERSED BECAUSE THE TRIAL COURT FAILED TO INSTRUCT THE JURY WITH REGARD TO ACCOMPLICE LIABILITY ON THAT COUNT, AND THUS PRECLUDED THE JURY FROM CONSIDERING THAT DEFENDANT COULD BE FOUND GUILTY OF SECOND DEGREE OR THIRD DEGREE AGGRAVATED ASSAULT AS LESSER INCLUDED OFFENSES OF ATTEMPTED MURDER, EVEN IF HIS CO-DEFENDANTS WERE GUILTY OF ATTEMPTED MURDER. (Not Raised Below)
POINT II THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF THIRD-DEGREE AGGRAVATED ASSAULT VIOLATED DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL. (Not Raised Below)
POINT III DEFENDANT'S SENTENCE IS EXCESSIVE
A. The Imposition Of A Presumptive Base Term With The Maximum Term of Parole Ineligibility Was An Abuse of Discretion
B. The Trial Court Abused Its Discretion In Imposing A Consecutive Sentence For The Attempted Escape
In a supplementary brief, defendant also argues:
POINT IV IMPOSITION OF THE DISCRETIONARY OFFENDER EXTENDED TERM FOR ATTEMPTED MURDER, AS WELL AS A CONSECUTIVE TERM ABOVE THE PRESUMPTIVE FOR ATTEMPTED ESCAPE, VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS TO TRIAL BY JURY AND DUE PROCESS OF LAW. (Not Raised Below)

I.
As of November 11, 1999, fifty-seven year old Bruce Moshen had been employed by the Bergen County Sheriff's Department as a corrections officer for seventeen years. He "supervise[d] and control[led] the movement and the behavior of the inmates."
On November 11, 1999, Moshen was on duty at the Bergen County Jail and was assigned as "Rover 3," the recreation officer responsible for "supervis [ing] the inmates in their recreation." Moshen was supervising Pod B, which was a 900 square foot yard, surrounded by a fifteen to twenty foot high fence topped with razor wire. In the yard there was "apparatus for the inmates to exercise on."
Moshen did not carry any firearm, but carried a two-way radio, and had the keys to open and access the various cells. He was the sole officer "conducting the yard" that night. Moshen did a "walk around to make sure there was no contraband" and that everything was "sound and secure." Then he "entered the living area and told the officer on the floor [that] everything [was] all ready" and then announced to the inmates that the "yard is now open, all come on out."
One inmate came out, walked over to the apparatus, and started doing chin-ups. Shortly thereafter another inmate, Andrew *695 Johnson, a 6'1", 160 pounds, twenty-two year old male, came out and started to play basketball, whereupon the other inmate went inside. A third inmate, co-defendant Andre Cutler, a twenty-three year old, 6' male weighing approximately 175 pounds, came out and went to the chin-up bar. Johnson and Cutler then went back into the building.
The two men subsequently came back outside as did defendant, a twenty-seven year old 6'2" tall male who weighed 240 pounds.
Moshen heard the door to the yard close as defendant came "behind" him. Defendant grabbed Moshen and placed his arm "around [Moshen's] neck." Moshen stamped on defendant's toe and "tried to turn around and get a shot off at him" but he "got struck" by Cutler and Johnson. While Moshen was being held by defendant, Cutler hit Moshen "very hard" on his head and Johnson kicked his left leg "out from under" him. Defendant then "got a more secure grip around [Moshen's] neck, and at that point they all started to batter" Moshen. Defendant kept pulling Moshen's chin with "a very strong grip" so that the other two could keep "battering" him. Moshen could not breathe and felt weak and decided to "play dead," and defendant "threw [him] down as if [he] were dead."
Moshen could then see the three men "go to the fence," but he could not stand on his left leg. Nevertheless, he "managed to work" himself to the fence and tried to pull one of them off the fence before he got hit in the head and could not lift his body from the ground.
Moshen decided "to get into the building and let people know there was an escape because [he] was no good." He did not have his radio and his dentures fell out of his mouth. Moshen "crawl[ed] into the building" and sought help from the other officers. On his way "there was a room full of inmates that [were] obscuring his passage" and "blocking" him. "Some were kicking [him]" and some were "stepping on [his] hand and various parts of [his] body."
Officer Dennis Michael Cooney observed that Moshen "was bleeding profusely through the head area" and was in "an incoherent state" as he was held up by another officer. Officer Cooney deduced that the escapees would try to get to East Broadway and notified Officer Schielzo, who ran with Cooney toward the East Broadway area. However, while they were running, they saw co-defendant Cutler run across a parking lot and "started scanning the yard area" to find the other escaped inmates. Officer Cooney saw a "silhouette" of a person against a trailer, and upon the threat of the use of a police dog, defendant surrendered. Defendant was handcuffed to the fence while Cutler was captured in the parking lot.
Officer Moshen was taken to the Hackensack University Medical Center where his lips, mouth and eye were stitched and sewed by Dr. David J. Bikoff, a plastic and reconstructive surgeon. The doctor testified that when Moshen arrived at the hospital, his bones were shattered and he had a "severely comminuted and deviated nasal fracture," otherwise stated as a "severely fractured nose and nasal septum" which required surgery. The doctor further testified that Moshen had cheekbone and alveola fractures which did not require surgery, and that he had multiple soft tissue injuries such as a laceration of the eyelid, an evulsion flap of the lower lip and his upper lip was cut in half. Moshen was discharged from the hospital on November 13, 1999, around 3 p.m.
At the time of trial, Moshen continued to have symptoms such as "[d]izziness, loss of balance, double vision, blurred vision, and chronic headaches," in addition to the facial *696 injuries. He also suffers from frequently "interrupted sleep with nightmares," and his ears keep "ringing" "like a cacophony of sound." At the time of trial, he was still unable to work.

II.
Defendant contends that the trial judge should have charged accomplice liability on the attempted murder charge as he did on the second-degree aggravated assault. Defendant further contends that in light of the evidence presented, the jury could have found him guilty of a lesser-included offense to attempted murder, but was precluded from doing so in light of the judge's instructions. Defendant asserts that the jury could have found that he "intended only to participate in an aggravated assault on Moshen to temporarily incapacitate him [while] the beating meted out by his codefendants evidenced their intent to kill Moshen."
In sentencing defendant, the trial judge stated that:
He planned this escape. It was wholly directed, and he first attacked the officer with the other two joining in. He was the one who had Officer Moshen around the throat while the other two may have punched and kicked him.
....
... [D]efendant was the mastermind, he planned this whole routine to be outside, to create the disturbance so he could get behind Officer Moshen, to start to strangle him with the others joining in. He stayed there after the others ran to get over the fence, because their main purpose was to get out, because it was clear to this Court that with the marshal [sic] arts training that this defendant has, that he intended to kill Officer Moshen.
That may well be so, but because defendant planned the escape, and even the assault incident to it, does not necessarily mean he intended to kill Moshen or had the requisite purpose to be convicted of an attempted murder. See N.J.S.A. 2C:5-1a (purposeful conduct required for attempt), 2C:2-2b(1) and 2C:11-3. In fact, the indictment for attempted murder expressly included a reference to N.J.S.A. 2C:2-6, which embodies the provisions on accomplice liability. Moreover, the judge charged the jury on accomplice liability with respect to the second-degree aggravated assault, so the judge found a jury question was presented concerning defendant's culpability or scope of responsibility with respect to the attack on Moshen.
Before the summations commenced, the prosecutor explained why she was requesting an accomplice charge with respect to the second-degree aggravated assault only. She explained that the State "would not want the accomplice charge on the attempted murder [because] the attempted murder was by this defendant's own conduct." She added:
However, I believe, Judge, that the accomplice charge is necessary for counts two and three for the following reason: If the jury declines to accept the State's theory, then they  they just  they need to be charged on accomplice, because the facts that have been elicited at this trial is that this defendant's role throughout the beating was static. He was the one who had the victim from behind and was tugging on his neck, I mean, we heard testimony there was clearly kicking and punching going on, but it's obvious that kicking and punching [were] not administered by this defendant, that's why we need the accomplice charge here.
After being questioned by the judge, the prosecutor "conced[ed] the Court has a point in not charging accomplice [liability] on count three" because of the nature of *697 the bodily injury required. When the judge indicated he was not charging on accomplice liability with respect to the attempted murder, defense counsel said "[b]ut his same actions would apply to the aggravated assault." However, counsel ultimately stated that "I will leave it up to the Court."[2]
Parties who participate in a criminal act may be guilty of different degrees of offense, depending on their own actions and culpability. State v. Bielkiewicz, 267 N.J.Super. 520, 531-33, 632 A.2d 277 (App.Div.1993). In Bielkiewicz we held that a jury must be instructed in connection with an accomplice charge that the defendant could be found guilty of a lesser offense than the principal based on what the accomplice actually did and intended. Judge Skillman traced the case law on accomplice liability, noted that the jury must be instructed concerning the differences in culpability required for the grades of crime (Bielkiewicz, supra, 267 N.J.Super. at 527-30, 632 A.2d 277), and held that the jury must be told that "[e]ach defendant may thus be guilty of a higher or lower degree of crime than the other, the degree of guilt depending entirely upon his own actions, intent and state of mind." Id. at 528, 632 A.2d 277 (quoting State v. Fair, 45 N.J. 77, 95, 211 A.2d 359 (1965)). Following the Supreme Court's doctrine, this Court further noted that:
[I]f several participate in an attack and death results, the degree of the offense as to each may turn upon his own acts and purpose. Thus if two should attack and one of them intends only a simple assault and battery and is unaware of the intent of the other to use deadly force, he would be culpable only according to his own intent and wrong. But if he participates in an attack or continues in it with an awareness of the purpose of others to kill or to do grievous bodily harm, he is chargeable with that further intent and result.
[Bielkiewicz, supra, 267 N.J.Super. at 528, 632 A.2d 277, citing State v. Madden, 61 N.J. 377, 391, 294 A.2d 609 (1972).]
In Bielkiewicz, we reversed defendant's murder conviction because the judge "did not inform the jury that a defendant could be found guilty as an accomplice" of lesser included offenses, and "did not even mention accomplice liability in instructing the jury with respect to [them]." Id. at 531, 632 A.2d 277. Similarly, in State v. Cook, 300 N.J.Super. 476, 488, 693 A.2d 483 (App.Div.1996), we reversed a murder conviction on grounds of "plain error" because, as Judge (now Justice) Long noted, although defendant was tried alone, the trial judge did "not adequately explain to the jury how it might go about finding an accomplice guilty of a different offense or degree of offense than the principal." See also State v. Jackmon, 305 N.J.Super. 274, 284-298, 702 A.2d 489, certif. denied, 153 N.J. 49, 707 A.2d 152 (1997).
We recognize that there was a premeditated plan in this case, unlike Bielkiewicz and Cook, and that defendant was tried alone so that the jury could not assess or weigh the comparative culpability. We also recognize that, unlike those cases, the jury in this case was not instructed in accomplice liability with respect to the critical count, and the State argues that "the facts in evidence did not support either a Bielkiewicz instruction or an accomplice liability instruction." The State also seems to contend that there was no basis to charge lesser culpability or a lesser-included offense. The State's arguments *698 are premised on the nature of Moshen's serious bodily injury and the assertion that "defendant's culpability ... was greater than either of his co-defendants," as only the defendant choked Moshen and the others did not intend to kill him.
We agree with the State that, in order to charge a lesser-included offense, there must be a rational basis for a jury to reject the greater charge and a clear basis in the evidence for a conviction on the lesser. State v. Savage, 172 N.J. 374, 397, 799 A.2d 477 (2002); State v. Brent, 137 N.J. 107, 113-15, 644 A.2d 583 (1994); State v. Choice, 98 N.J. 295, 298, 486 A.2d 833 (1985). But the State's argument presumes the correctness of its own theory of the facts. A jury could have found defendant's intent was to escape, and to assault to the point of incapacity to prevent it, but not to kill, even if the co-defendants had that intent. Moreover, the defendant was charged in the indictment with two counts of aggravated assault, which would have served as lesser-included offenses. As the Supreme Court noted in State v. Sloane, 111 N.J. 293, 299, 544 A.2d 826 (1988), "[a] jury reluctant to acquit defendant might compromise on a verdict of guilt on the greater offense," if it is the only crime charged. See also Bielkiewicz, supra, 267 N.J.Super. at 534, 632 A.2d 277.
Finally, while it is true that defendant did not object to the charge or to the judge's statements that he was not charging accomplice liability on count one (and as to count three when it was subsequently addressed), it is also true that defense counsel suggested that counts one and two should be treated alike. We understand that only defendant put his arms around Moshen and choked him, but we cannot speculate that the jury had to find that the choking was the basis for the attempted murder conviction. In any event, Johnson and Cutler  like defendant  were indicted as principals and accomplices on counts one, two and three, but the State asked for an accomplice charge on count two only. The fact defendant was tried alone is not dispositive in these circumstances, Cook, supra, 300 N.J.Super. at 479, 488, 693 A.2d 483, and the judge concluded that there was a sufficient basis for charging accomplice liability with respect to the same victim as alleged in count two.[3]
Under these circumstances, we reverse the attempted murder conviction and remand for a retrial on that count. As the issue is not before us, we do not address whether the extended term can be imposed on the second-degree aggravated assault if the State does not seek to retry defendant for attempted murder but desires to unmerge count two. We also do not address the impact of that conviction or the conviction on count three with respect to the lesser-included offenses relevant to the retrial of the attempted murder count. Cf. State v. Grunow, 102 N.J. 133, 149, 506 A.2d 708 (1986); State v. Pridgen, 245 N.J.Super. 239, 250, 584 A.2d 869 (App.Div.1991). In any event, there is no basis for reversing the other convictions as there was no "plain error" on the ground that the judge did not charge lesser-included offenses to third-degree aggravated assault.

*699 III.
In light of our disposition, we need not address the sentencing issues raised. Irrespective of a retrial, the judge should stay resentencing until after the Supreme Court decides the cases of State v. Natale, 373 N.J.Super. 226, 861 A.2d 148 (App.Div.2004) and State v. Abdullah, 372 N.J.Super. 252, 858 A.2d 19 (App.Div.2004), which were recently argued in the Supreme Court. We add only that jury fact-finding is not required before a defendant can be sentenced to an extended term under the persistent offender statute, N.J.S.A. 2C:44-3a. State v. McMillan, 373 N.J.Super. 27, 28, 860 A.2d 484 (App.Div.2004). The same is true with respect to imposition of a consecutive term. Natale, supra, 373 N.J.Super. at 238, 861 A.2d 148; Abdullah, supra, 372 N.J.Super. at 281, 858 A.2d 19.

IV.
We remand for further proceedings consistent with this opinion.
NOTES
[1] Counts nine and ten are not contained in the record, but there is no dispute as to the charges which were presented to the jury.
[2] The day before defendant's attorney indicated he had no objection when the judge stated he would not charge accomplice liability on the attempted murder count.
[3] We also note in connection with count one that this case involved offenses occurring before the June 2001 amendment to the No Early Release Act and the jury was not unanimous as to whether defendant caused "serious bodily injury," and found he did not, whereas it found he caused "serious bodily injury" with respect to count two. In his summation, defense counsel acknowledged that defendant assaulted Officer Moshen, but argued the State "has not proven beyond a reasonable doubt ... attempted murder and [that defendant] along with the others, caused serious bodily injury," as opposed to "bodily injury."