**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2855-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAANDRE J. WADE,

    Defendant-Appellant.

_____

Argued September 29, 2022 – Decided October 25, 2022

Before Judges Haas and Gooden Brown.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 19-07-1173.

Simon Wiener, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Simon Wiener, of counsel and on the briefs).

Joie D. Piderit, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Joie D. Piderit, of counsel and on the brief).

PER CURIAM

By leave granted, defendant appeals from the May 3, 2022 Law Division order denying his motion to dismiss two unlawful gun possession counts charged in a three-count indictment. In a May 10, 2022 sua sponte order, we stayed the trial "until further order of this court."

On appeal, in a single point, defendant presents the following arguments for our consideration:

> THE TRIAL COURT ERRED BY DENYING [DEFENDANT'S] MOTION TO DISMISS THE INDICTMENT AS TO COUNTS [ONE] AND [TWO] BECAUSE THERE WAS NO EVIDENCE OF [DEFENDANT'S] GUILT UNDER THE ACCOMPLICE-LIABILITY THEORY THE STATE EXPLICITLY TOLD THE GRAND JURY TO APPLY AND BECAUSE THE PROSECUTOR'S VACILLATING EXPLANATIONS INTERFERED WITH THE GRAND JURY'S DECISION-MAKING PROCESS.
>
> > A. Because the State Must Abide by Its Own Explanation of the Applicable Law to the Grand Jury and Its Inclusion of Accomplice Liability in the Indictment, It Could Not Retreat from Its Choice to Instruct the Grand Jury to Consider Only a Theory of Accomplice Liability.
> >
> > B. The State Provided No Evidence to the Grand Jury that Could Support Accomplice Liability, Warranting Dismissal of the Indictment.

2

1. Generally, Accomplice Liability Is Conceptually Inconsistent with Possessory Weapons Offenses.

2. Even If Accomplice Liability Were Readily Applicable to Possessory Weapons Offenses, the State Presented No Evidence that [Defendant] Acted as [Codefendant's] Accomplice in This Case.

C. The Prosecutor's Vacillating Explanations of the Applicable Law Confused the Jury, Interfering with Its Decision-Making Process.

Because the prosecutor gave inaccurate and misleading legal instructions to the grand jury, we reverse.

Defendant and codefendant Malik Stringer were charged in a Middlesex County indictment with two counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) and N.J.S.A. 2C:2-6 (counts one and two); and fourth-degree unlawful possession of prohibited devices, N.J.S.A. 2C:39-3(f) and N.J.S.A. 2C:2-6 (count three). The charges stemmed from a May 4, 2019 motor vehicle stop based on an invalid temporary registration tag. Codefendant Stringer was driving the vehicle and defendant was the front seat passenger. The car belonged to Stringer's mother. Upon speaking with Stringer, police detected the odor of marijuana and ordered Stringer out of the car. Police also ordered

3

A-2855-21

defendant out of the vehicle. An ensuing search of the vehicle uncovered a handgun in the center console and another handgun under the front passenger seat floor mat, as well as hollow point ammunition "in one of the magazines." In addition, a small amount of marijuana was found on each defendant. Both defendants were arrested.

The prosecuting attorney began the grand jury presentation by reading the proposed indictment to the grand jurors as well as the applicable statutes, including accomplice liability, N.J.S.A. 2C:2-6, which provides in pertinent part:

> a. A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.
>
> b. A person is legally accountable for the conduct of another person when:
>
> > (1) Acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;
> >
> > (2) He is made accountable for the conduct of such other person by the code or by the law defining the offense;
> >
> > (3) He is an accomplice of such other person in the commission of an offense; or

4

(4) He is engaged in a conspiracy with such other person.

c. A person is an accomplice of another person in the commission of an offense if:

(1) With the purpose of promoting or facilitating the commission of the offense; he

(a) Solicits such other person to commit it;

(b) Aids or agrees or attempts to aid such other person in planning or committing it; or

(c) Having a legal duty to prevent the commission of the offense, fails to make proper effort so to do; or

(2) His conduct is expressly declared by law to establish his complicity.

New Brunswick Police Officer Michael Kerwin, who conducted the search of the vehicle, was the sole testifying witness before the grand jury. During the prosecutor's questioning, he recounted the May 4, 2019 encounter that led to defendants' arrests and responded to numerous questions posed by the grand jurors. Specifically, when a juror asked whether "the car actually belong[ed] to either [defendant,]" Kerwin responded that the car belonged to Stringer's mother. Additionally, jurors asked whether "either [defendant]

5

admit[ted] to owning either gun," whether either defendant had "a permit to carry a gun," and whether the guns were "registered to either [defendant]." Kerwin responded in the negative to all three questions and was excused from the witness stand.

At that point, the prosecutor reread the proposed indictment to the grand jurors and asked whether there were any questions. A juror asked whether both defendants were being charged because "[police] couldn't tell who[se] gun it was." Referring to the prior reading of N.J.S.A. 2C:2-6, the prosecutor responded that "[t]hey're charged through accompli[ce] liability," and then left the room for the grand jurors to deliberate. Upon being informed that the grand jurors had additional questions for the officer, the prosecutor recalled Kerwin and continued the presentation.

Notably, a juror asked Kerwin how he "attribute[d]" or "tie[d]" the guns to defendants. Kerwin responded that "both guns were found in the vehicle that [defendants] were traveling in." After the prosecutor questioned Kerwin further about the location of the guns in relation to the location of each defendant in the vehicle, the jurors asked whether the police processed the guns for fingerprints or determined whether the guns were stolen. Kerwin responded that, to his knowledge, no fingerprints were obtained, and a search revealed that the guns

were "not stolen." In response, a juror pointedly asked Kerwin, "[s]o who owns the gun[s]?" Kerwin responded he was "not aware of who owns the firearms."

At that point, in an attempt to clarify the applicable law, the prosecutor told the grand jurors:

> There is a presumption -- not presumption, that's not the right word. There is case law or a statute, I can't remember, but there is law that says if there are multiple people in a car and the driver is not the registered owner it's presumed that the -- it's called constructive possession, so just because they didn't physically have it on their person at that time, they were still in constructive possession of the guns as they were the only two individuals in the car at the time the guns were there.

A juror then asked Kerwin whether he had observed either defendant "fumbling around" when he was approaching the vehicle. Kerwin responded he saw no movement in the car.

At that juncture, a juror asked the prosecutor to read the constructive possession statute, N.J.S.A. 2C:39-2(a), which provides in pertinent part:

> When a firearm . . . is found in a vehicle, it is presumed to be in the possession of the occupant if there is but one. If there is more than one occupant in the vehicle, it shall be presumed to be in the possession of all, except under the following circumstances:
>
> > (1) When it is found upon the person of one of the occupants, it shall be presumed to be in the possession of that occupant alone;

7

> (2) When the vehicle is not a stolen one and the weapon or other instrument is found out of view in a glove compartment, trunk or other enclosed customary depository, it shall be presumed to be in the possession of the occupant or occupants who own or have authority to operate the vehicle.

The prosecutor then left the room to allow the grand jurors to continue their deliberations but returned when a juror requested clarification about the exceptions to the presumption of possession under N.J.S.A. 2C:39-2(a) when more than one occupant was in the vehicle. Specifically, the juror asked whether possession "can only be attributed to the owner or driver of said car" if "one of these handguns was found in a compartment," like a "glove compartment or something like that." In response, the prosecutor reread the pertinent provision of N.J.S.A. 2C:39-2(a) and then defined "customary depository" as referring to "somewhere where you typically put a gun."

Following up on the prosecutor's response, a juror commented:

> Maybe we can sum it up with this and I don't know if that clarifies things.
>
> We're trying to figure out whether the gun in the glove compartment can only be attributed to the driver and not the passenger, because what you're saying is if there's two or more people if it's in the passenger's side then yes, it's attributed to everybody in the car, but if it's any of these compartments . . .

. . . .

. . . it's only the owner of said car.

The following colloquy then ensued between the prosecutor and a juror:

> [PROSECUTOR]: It's the State's theory that it is in possession of both of them[, N.J.S.A. 2C:]2-6, which is the one I read to you earlier about accompli[ce] liability.
>
> . . . .
>
> . . . It's an individual who . . . aids or agrees to attempt to aid another person in planning or committing of a crime.
>
> [GRAND JUROR]: Okay. So that[] supersedes anything that was just said basically.
>
> . . . .
>
> [PROSECUTOR]: Well that's what our theory is under.
>
> . . . .
>
> . . . Not under [N.J.S.A. 2C:]39-2. Understand?
>
> [GRAND JUROR]: Now we understand.

Shortly thereafter, the grand jury returned a true bill on all three counts.

Defendant moved to dismiss the indictment, arguing the prosecutor's statements showed the State was proceeding under a theory of accomplice liability, as opposed to constructive possession, but the State had not presented

sufficient evidence to support an accomplice liability theory. In an order entered May 3, 2022, the judge denied the motion as to counts one and two but, for different reasons than those advanced by defendant, granted the motion with respect to count three. The ruling on count three is not challenged on appeal.

As to counts one and two, in an oral opinion following oral argument, the judge acknowledged that the prosecutor's "discussion on the law was inartful" and "inaccurate." Nonetheless, because the grand jury was instructed on constructive possession, the judge determined "[t]he [g]rand [j]ury was entitled to rely on the law of constructive possession and find that there was [a] prima[] facie case established as to the possession of a weapon . . . based on the portion of the law that wasn't misconstrued or mischaracterized by the prosecutor."

The judge considered State v. Cook, 300 N.J. Super. 476 (App. Div. 1996), where we questioned "[w]hether accomplice liability even applie[d] to a possessory weapons offense" but held that "the giving of an erroneous accomplice charge" to a petit jury in a trial where "multiple participants engage[d] in a violent attack" that resulted in the victim's death was, "at most, harmless." Id. at 486, 489, 490. In support, we relied on the fact that the jury was correctly instructed on the principle that "two or more persons may jointly share actual or constructive possession of a weapon." Id. at 490.

Relying on <u>Cook</u> and the legal principles governing motions to dismiss an indictment, the judge concluded:

> I find . . . that the prosecutor did present a prima facie case that both [codefendant] and [defendant] possessed two handguns in that vehicle. I don't find here that the indictment is manifestly deficient or palpably defective. . . . [T]here's a presumption . . . that a [g]rand [j]ury proceeding is valid. And unless I'm convinced . . . that it's palpably defective on the clearest and plainest grounds, then my obligation is to not disturb the [g]rand [j]ury indictment.
>
> The . . . defense here concedes some evidence was presented to the [g]rand [j]ury, although . . . not sufficient evidence. But the quantum of evidence doesn't have to be great . . . .
>
> So . . . I find here that there is sufficient evidence . . . which is just some evidence required on both counts of the indictment that remain. And that as to the law they were given all the elements of the statute. They were explained constructive possession and joint possession. They were also given some confusing language on accomplice liability. . . . But as th[e c]ourt said in <u>State [v.] Cook</u> that's harmless error. And in my estimation if it's harmless error before a petit jury, it's certainly harmless error before a [g]rand [j]ury.

This appeal followed.

"A trial court's denial of a motion to dismiss an indictment is reviewed for abuse of discretion." <u>State v. Twiggs</u>, 233 N.J. 513, 544 (2018). Under that standard, "[w]e will not disturb the denial of such a motion 'unless [the judge's

11

discretionary authority] has been clearly abused.'" State v. Saavedra, 433 N.J. Super. 501, 514 (App. Div. 2013) (second alteration in original) (quoting State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994)). "[A]n abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "[W]e review the trial court's legal conclusions de novo." State v. Nicolas, 461 N.J. Super. 207, 211 (App. Div. 2019) (citing State v. Nash, 212 N.J. 518, 540-41 (2013)).

"An indictment is presumed valid[,]" State v. Feliciano, 224 N.J. 351, 380 (2016), and "'should be disturbed only on the "clearest and plainest ground"' and only when the indictment is manifestly deficient or palpably defective." State v. Hogan, 144 N.J. 216, 228-29 (1996) (citations omitted) (quoting State v. Perry, 124 N.J. 128, 168 (1991)). At the grand jury stage, "[a]s long as the State presents 'some evidence establishing each element of the crime to make out a prima facie case,' a trial court should not dismiss an indictment." Feliciano, 224 N.J. at 380 (quoting State v. Saavedra, 222 N.J. 39, 57 (2015)).

Still, during the grand jury presentation, "the prosecutor must clearly and accurately explain the law to the grand jurors and not leave purely legal issues

open to speculation by lay people who are simply performing their civic duty." State v. Brady, 452 N.J. Super. 143, 166 (App. Div. 2017). When that does not occur, an indictment may be challenged. However, "a prosecutor's decision on how to instruct a grand jury will constitute grounds for challenging an indictment only in exceptional cases," and "defendants bear the burden of proving prosecutorial error." State v. Triestman, 416 N.J. Super. 195, 202, 204 (App. Div. 2010) (citing State v. Francis, 191 N.J. 571, 587 (2007)).

Although "incomplete or imprecise instructions by a prosecutor will not ordinarily warrant dismissal of the indictment," there is nevertheless "a difference between instructions that are merely imprecise or incomplete and those that are blatantly wrong." State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001). In that regard, "an indictment will fail where a prosecutor's instructions to the grand jury were misleading or an incorrect statement of law." Triestman, 416 N.J. Super. at 205. Nonetheless, an "indictment should not be dismissed unless the prosecutor's error was clearly capable of producing an unjust result. This standard can be satisfied by showing that the grand jury would have reached a different result but for the prosecutor's error." Hogan, 336 N.J. Super. at 344.

Here, defendant argues that because "the prosecutor ordered the jury to disregard [constructive possession]" and apply a "theory of accomplice liability," which is "categorically inapplicable to possessory offenses and specifically ill-suited to the gun[]possession counts here," the indictment is "doom[ed]." Defendant asserts "[t]he dearth of evidence supporting the [S]tate's theory and the confusing instructions' effect on the deliberation process require dismissal of the indictment."

As the judge observed, the prosecutor's instruction to the grand jury to disregard constructive possession and rely exclusively on a theory of accomplice liability to establish a prima facie case of unlawful possession of a handgun was "inartful" and "inaccurate." See Cook, 300 N.J. Super. at 489 ("Whether accomplice liability even applies to a possessory weapons offense is doubtful."). Nonetheless, the judge determined the prosecutor's error was "harmless." However, this was not a case where the grand jurors were allowed to rely on two theories of liability, one correct and one incorrect. On the contrary, the grand jurors were expressly instructed by the prosecutor to disregard the principles of constructive possession, which was the correct theory of liability for the possessory weapons offenses.

"[D]ismissal of an indictment is warranted . . . if the prosecutor's conduct 'impinge[s] on a grand jury's independence and improperly influence[s] its determination.'" State v. Bell, 241 N.J. 552, 561 (2020) (alterations in original) (quoting Francis, 191 N.J. at 587). Here, because the instructions given were inaccurate and misleading, the indictment cannot stand. Given the questions posed by the grand jurors, particularly their uncertainty about the application of the exceptions to the presumption of possession under N.J.S.A. 2C:39-2(a) when more than one occupant was in the vehicle, we are persuaded the grand jurors would have reached a different result but for the prosecutor's error. Thus, we reverse the May 3, 2022 order denying the motion to dismiss counts one and two of the indictment, but "add that nothing in this opinion precludes the State from re-presenting this matter to another grand jury." State v. Tucker, 473 N.J. Super. 329, 349 (App. Div. 2022). We also vacate the stay.

Reversed and remanded for entry of an appropriate order. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2855-21