**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3641-18T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

LEON PETERSON, a/k/a
LEON PETERSEN,

      Defendant-Appellant.

_____

Submitted May 18, 2020 – Decided July 9, 2020

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 11-11-2778.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Nicole Lynn Campellone, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Leon Peterson appeals from a February 19, 2019 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Having reviewed the record in light of the applicable legal standards, we reverse and remand for an evidentiary hearing regarding defendant's claims that his appellate counsel and second trial counsel were ineffective.

I.

Defendant raises the following sole issue on appeal:

POINT I

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A [PRIMA FACIE] CASE THAT APPELLATE COUNSEL AND SECOND TRIAL COUNSEL WERE INEFFECTIVE FOR NOT PURSUING THAT HIS WEAPONS CONVICTIONS BE VACATED.

We briefly discuss the procedural history, including the facts underlying defendant's convictions, as they provide context for our opinion. Following a jury trial, defendant, along with Brandon Cooper and Brent Johnson, were convicted of one count of first-degree armed robbery, contrary to N.J.S.A. 2C:15-1; one count of conspiracy to commit robbery, contrary to N.J.S.A. 2C:5-2 and 2C:15-1; one count of possession of a handgun for an unlawful purpose,

contrary to N.J.S.A. 2C:39-4(a); and one count of unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b).

On the evening of May 27, 2011 and into the early morning hours of May 28, 2011, S.J.[1] was at the Tropicana Hotel with friends. At some point during the early morning, S.J. left her hotel room with a friend, M.S. They decided to go to the parking garage to smoke a cigarette.

S.J. and M.S. were only on the parking deck for a few minutes when they were approached by a group of three men. One of the men asked M.S. for a cigarette, then punched him. On seeing this, S.J. ran toward the elevator, and M.S. followed. M.S. and S.J. made it to the elevator lobby, but the men caught up. The men hit M.S. again, while someone wearing a purple shirt, later identified as Cooper, pulled S.J. back into the parking garage.

The men proceeded to kick, punch, and beat M.S., who fell to the ground, and eventually was knocked unconscious. During the attack, M.S. felt someone searching through his pockets. While he could not see the faces of his assailants because he was trying to protect his head, he was able to identify the clothing of his three attackers. He saw that one was wearing purple, one was wearing orange shorts, and the third was wearing a checkered shirt. He did not see any weapons

---

[1] We use initials of the victims to protect their privacy.

during the attack. Cooper stayed with S.J. while the other assailants attacked M.S.

Around the time of the attack, Kenneth Wicks, a patron of the casino that evening, left the casino with his friend Steven Petosa and went to the parking garage. When Wicks and Petosa got off the elevator, Wicks walked into the garage and observed M.S. lying on the ground with blood coming out of his nose. The two men standing over M.S. claimed that he was their friend and was drunk. Wicks did not believe them and went back into the lobby to tell his friend. When Petosa went into the garage and saw M.S. covered in blood, he asked what had happened. M.S. replied that the men standing around him had mugged him, he was hurt, and he needed help.

At this point, one man lifted his shirt and showed the men the handle of a gun. As he displayed the gun, he said, "You should get out of here before something happens." Wicks and Petosa immediately left the area, and Petosa called 9-1-1. They began to drive away but returned out of concern for the victim. By the time they returned, the attack was over, and no one involved was in the area.

After the men stopped assaulting M.S. and he regained consciousness, the men took his shirt from him, and told him to walk to the other side of the parking

A-3641-18T1

deck. As he was walking away, he saw the man in the purple shirt holding S.J. "like hugging her very closely from behind," while the man wearing orange was walking "a little bit in front of her." After he completed his walk, one of the men told him to take off the rest of his clothes, so he removed the remainder of his clothes except for his underwear.

Near the end of the incident with Cooper and Johnson, S.J. was able to run away toward the elevators. However, the men caught up with her and forced her to get into the elevator with them as they wanted to go to her hotel room. When the elevator doors opened next, the police were waiting and arrested the two men. The police searched both men and found a black handgun and M.S.'s cell phone on Johnson. A search of Cooper did not reveal any items. In the course of processing the arrests, the police identified Cooper as the man wearing the purple shirt, and Johnson as the man wearing the tan shirt and orange shorts.

When Officer Michael Losasso responded to the Tropicana hotel, security directed his attention to an individual acting suspiciously, later identified as defendant. Security had tracked defendant on camera from the floor of the robbery to the site where Losasso observed him. At the time, defendant was reaching into a trash can with both hands. When the officer reached him, Losasso told defendant to put his hands behind his head and arrested him.

5

Losasso's search of defendant did not reveal a weapon but did reveal a wallet that belonged to M.S. Next, Losasso searched the trash can, and found a pair of pants, pair of shoes, a shirt, and a belt. M.S. later identified the items as his.

The police later obtained the surveillance video from the hotel. Cody Clisham, the security supervisor at the hotel, observed some of the events of the evening live through the hotel's security cameras. After the incident was over, Clisham followed hotel procedure and compiled the feeds of various cameras that had captured the incident into a single video. According to Clisham, he included the full camera recording of the location of the incident for the time period of the event and any recorded images that contained either of the two victims or any person considered a suspect. Clisham testified that he spent a considerable amount of time compiling the video and he did not omit any video recording in which he saw the victims or any defendant.

A grand jury returned an indictment against Cooper, Johnson, and defendant for two counts of first-degree robbery, N.J.S.A. 2C:15-1; conspiracy to commit robbery, N.J.S.A. 2C:5-2, 2C:15-1; possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); and unlawful possession of a handgun N.J.S.A. 2C:39-5(b). The grand jury charged Cooper and Johnson with the

additional crimes of aggravated sexual assault N.J.S.A. 2C:14-2, and sexual assault N.J.S.A. 2C:14-2(c).

At the trial, the victims, the arresting officer, the investigating officer, the two witnesses, and the hotel security supervisor testified to the facts stated above. Additionally, at trial, the court played the video compiled by Clisham for the jury. This tape was again played during M.S.'s testimony, during which time M.S. described the events as they were shown on screen. The jury convicted both Cooper and Johnson on all the counts. As for defendant, the jury returned a verdict of guilty on all counts except the robbery count related to S.J.

At defendant's sentencing, the court found multiple aggravating factors and no mitigating factors. Accordingly, the court sentenced defendant to fifteen years on the armed robbery count, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA). Defendant was also sentenced to a concurrent ten-year term for possession of a weapon for an unlawful purpose with a three-year period of parole ineligibility and a three-year concurrent term for unlawful possession of a weapon with an eighteen-month period of parole ineligibility. In determining whether consecutive sentences were appropriate, the court stated that the weapons convictions were "based on accomplice evidence and there [was] no evidence that he had foreknowledge of his co-defendant's possession[,]" and

"there [was] a lack of evidence that he knew, prior to the commission of the offenses for which he's an accomplice, that there would be a gun involved." The sentencing court then stated that there was nonetheless "[c]ertainly enough evidence in the case to sustain the conviction of those charges as an accomplice."

On direct appeal, defendant limited his arguments to the following points:

> POINT I
>
> THE COURT'S FAILURE TO PROVIDE THE JURY WITH A CHARGE EXPLAINING HOW MR. PETERSON COULD BE FOUND GUILTY OF A LESSER-INCLUDED OFFENSE AS AN ACCOMPLICE TO THE CO-DEFENDANTS IF HE DID NOT SHARE THEIR INTENT TO COMMIT THE SPECIFIC GREATER OFFENSE OF FIRST-DEGREE ROBBERY DEPRIVED MR. PETERSON OF DUE PROCESS AND A FAIR TRIAL.
>
> POINT II
>
> THE FIFTEEN–YEAR AGGREGATE SENTENCE IS MANIFESTLY EXCESSIVE, UNDULY PUNITIVE AND MUST BE REDUCED.

We reversed defendant's armed robbery conviction and remanded for a new trial as to that count because we concluded the trial court's jury instruction was deficient in that the court failed to properly instruct the jury on accomplice liability when lesser included offenses are charged. State v. Cooper, Nos. A-2011-12, A-2988-12, A-3099-12 (App. Div. September 4, 2015) (slip op. at 11-

12). We, however, affirmed as to the weapons offenses, because defendant did not contend that the accomplice liability charge was deficient for any other counts of the complaint. Cooper, slip op. at 9 n.3. We further noted in that opinion:

> The State tried Peterson on the theory that he was Johnson's accomplice to the armed robbery and the jury so found. In contrast, Peterson's theory was that the video showed he was very uninvolved, participated very little in the beating, and stayed completely away from S.J. Importantly, there was no evidence that Johnson displayed his gun to Peterson before or during the robbery of M.S. or that Peterson had any knowledge that Johnson had a weapon. Indeed, in sentencing Peterson, the judge noted this lack of evidence that Peterson knew of any weapon before the robbery was underway. Hence, the evidence clearly indicated a basis to find Peterson not guilty of first-degree robbery and guilty of second-degree robbery.
>
> [Id. at 11 (emphasis added).]

On remand, defendant, represented by new trial counsel, pled guilty on April 12, 2017 to second-degree robbery. The court sentenced defendant on that charge to an eight-year term subject to NERA and to concurrent terms of ten years for the possession of a weapon for an unlawful purpose conviction and three years for the unlawful possession of a weapon conviction, pursuant to the recommended sentence in the negotiated plea agreement.

9

Defendant then filed an October 1, 2017 pro se PCR petition arguing that his appellate counsel was ineffective because he failed to argue for reversal of defendant's weapons conviction on direct appeal. Defendant maintained that he "received a ful[l] reversal for [his] armed robbery charge but the weapon[s charge] didn't get reversed[,]" he "received a change in sentence to a second[-]degree robbery which is robbery without a weapon[,]" and he "was never in possession of a weapon[, and] the victim stated there was no weapon involved." He further stated at oral argument that reversing the weapons charges was "one of the main arguments that [he] wanted [his appellate counsel] to bring up on the appeal knowing that the first-degree armed robbery was being reversed." While defendant did not raise any contentions regarding his second trial counsel in his pro se PCR petition, defendant's PCR counsel noted at oral argument that one of defendant's primary issues after the remand was that "his then-trial counsel did not address the weapons charge."[2]

The PCR court denied defendant's petition in a February 19, 2019 order. In its accompanying written opinion, the PCR court noted that "[s]ince defendant did not challenge his weapons convictions during his appeal or seek certification

---

[2] Defendant's PCR counsel indicated at the hearing that she submitted a supplemental brief on defendant's behalf. That document was not included in the record before us.

from the Supreme Court regarding the Appellate Division's ruling, he is now barred from raising this issue" in a PCR petition under Rule 3:22-4. The court also noted defendant could not show that he was prejudiced by the alleged error as the two weapons charges defendant was convicted of "do not contain lesser included offenses . . . [and] the erroneous jury charge did not affect the outcome on those charges" so his attorney's challenge to those charges would have been unsuccessful.

The PCR court also determined that under the theory of accomplice liability, it was not necessary for the jury to find defendant guilty of any robbery charges in order to find him guilty of the weapons offenses. The court emphasized that defendant "failed to describe any denial of his constitutional rights regarding that issue or present evidence that his sentence is not in accordance with the law."

With respect to defendant's second trial counsel, the PCR court explained that we affirmed his weapons convictions and limited the remand to defendant's robbery charge so "[i]t would have been inappropriate for defendant's second trial counsel to raise the issue of the weapons charges as that matter was previously addressed on appeal and was not open for debate." The PCR court concluded that the "proper course for addressing the weapons charges . . . would

have been to seek certification from the Supreme Court on the issue[,]" and, therefore, defendant failed to make a prima facie showing of ineffective assistance of either his appellate or second trial counsels.

This appeal followed.

II.

PCR serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must "establish, by a preponderance of the credible evidence, that he [or she] is entitled to the requested relief." State v. Mitchell, 126 N.J. 565, 579 (1992) (quoting State v. Marshall, 244 N.J. Super. 60, 69 (Law Div. 1990)). Where a PCR court does not conduct an evidentiary hearing, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (quoting State v. Harris, 181 N.J. 391, 421 (2004)).

A PCR court deciding whether to grant an evidentiary hearing "should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Preciose, 129 N.J. at 462-63. "To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of succeeding under the

test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984), and <u>United States v. Cronic</u>, 466 U.S. 648 (1984), which [our Supreme Court] adopted in <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987)." <u>Id.</u> at 463. These principles apply as well to a defendant's claim of ineffective assistance of appellate counsel. <u>State v. Gaither</u>, 396 N.J. Super. 508, 513 (App. Div. 2007), <u>certif. denied</u>, 194 N.J. 444 (2008).

Under the <u>Strickland</u> standard, a petitioner must show counsel's performance was both deficient and prejudicial. <u>State v. Martini</u>, 160 N.J. 248, 264 (1999). Counsel's performance is deficient if it falls "below an objective standard of reasonableness" measured by "prevailing professional norms." <u>Strickland</u>, 466 U.S. at 687-88. In evaluating deficiency, counsel's performance must be reviewed with "extreme deference . . . , requiring 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Fritz</u>, 105 N.J. at 52 (quoting <u>Strickland</u>, 466 U.S. at 689).

## III.

First, we disagree with the PCR court's conclusion that defendant's argument was procedurally barred under <u>Rule</u> 3:22-4. "Under New Jersey case law, petitioners are rarely barred from raising ineffective-assistance-of-counsel claims on post-conviction review." <u>Preciose</u>, 129 N.J. at 459. "Our courts have

expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." Id. at 460. Consequently, "[i]neffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." Ibid. (citing R. 3:22-4).

In addition, we have previously explained that ineffective assistance of counsel claims are not barred by Rule 3:22-4:

> [I]neffective assistance of counsel claims, particularly ineffective assistance of appellate counsel, are congruous with the exceptions to the procedural bar of R. 3:22-4 because they (1) implicate issues that could not have been reasonably raised in prior proceedings; (2) involve infringement of constitutional rights; or (3) present exceptional circumstances involving a showing of fundamental injustice.
>
> [State v. Moore, 273 N.J. Super. 118, 125 (App. Div. 1994).]

In this instance, both of defendant's PCR contentions are framed in the context of ineffective assistance of counsel and could not have been reasonably raised in prior proceedings. As to his appellate counsel, "the record [was] inadequate to disclose what reasons of tactics and strategy motivated counsel" not to raise an argument for reversal of the weapons convictions. See State v.

<u>Dixon</u>, 125 N.J. 223, 261 (1991). Additionally, regarding his second trial counsel, the events giving rise to that claim had not yet occurred. As such, the PCR judge should not have found that either of defendant's claims were procedurally barred by <u>Rule</u> 3:22-4.

IV.

Despite this procedural error, the PCR court addressed defendant's contentions on their merits and first determined that defendant failed to make a prima facie showing on his claim that his appellate counsel was ineffective for failing to appeal his weapons convictions.[3] We disagree.

To obtain a new trial based on ineffective assistance of appellate counsel, a defendant must establish that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. <u>See</u> <u>State v. Echols</u>, 199 N.J. 344, 361 (2009). Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found either, that no error had occurred or that it was harmless. <u>State v. Reyes</u>, 140 N.J. 344, 365 (1995); <u>see also</u> <u>State</u>

---

[3] We note that defendant's first trial counsel neither made a motion to dismiss the weapons offenses nor did he object to the accomplice liability or constructive possession jury instructions given at trial. Defendant has not asserted that his first trial counsel's performance was deficient and limited his ineffective assistance claims to his appellate and second trial counsels.

15

v. Harris, 181 N.J. 391, 499 (2004). Consequently, appellate counsel is not required to raise every possible issue and need only raise issues that have a reasonable possibility of success. Gaither, 396 N.J. Super. 515-16; see also State v. Morrison, 215 N.J. Super. 540, 549 (App. Div. 1987) (noting "appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant").

Under N.J.S.A. 2C:39-4(a)(1), "[a]ny person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree." Additionally, under N.J.S.A. 2C:39-5(b), "[a]ny person who knowingly has in his possession any handgun . . . without first having obtained a permit to carry the same . . . is guilty of a crime of the second degree."

N.J.S.A. 2C:2-6(c) provides in relevant part that an individual is an accomplice of another if "[w]ith the purpose of promoting or facilitating the commission of the offense[,] he . . . [s]olicits such other person to commit it, [or] [a]ids or agrees or attempts to aid such other person in planning or committing it." For accomplice liability to attach, the jury "must find that [the defendant] 'shared in the intent which is the crime's basic element, and at least indirectly participated in the commission of the criminal act.'" State v.

Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993) (quoting State v. Fair, 45 N.J. 77, 95 (1965)); see also State v. Whitaker, 200 N.J. 444, 458 (2009) ("An accomplice is only guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal.").

More specifically as to intent, in State v. Lopez, 187 N.J. 91, 93 (2006), the Court held in a robbery context that N.J.S.A. 2C:15-1(a) does not include "'afterthought' robbery – the situation in which a defendant does not formulate the intent to steal until after force is used." Further, in Whitaker, 200 N.J. at 463, the Court held that the defendant could not be guilty of felony murder unless he was guilty as an accomplice in the underlying robbery, and he could not be guilty of being an accomplice in the robbery "based [solely] on his conduct after [the alleged principal] had already robbed and fatally wounded the victim."

Additionally, it has long been held that possession need not be actual physical possession. See State v. Humphreys, 54 N.J. 406, 413-414 (1969) ("Possession does not necessarily mean actual physical possession; it is enough that defendant have intentional control and dominion over the object." (Internal quotation marks omitted)); State v. Cook, 300 N.J. Super. 476, 490 (App. Div. 1996) ("Possession may be actual or constructive and two or more persons may

jointly share actual or constructive possession of a weapon."). More specifically, "[a] person constructively possesses an object when, although he lacks 'physical or manual control,' the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." State v. Spivey, 179 N.J. 229, 237 (2004) (quoting State v. Schmidt, 110 N.J. 258, 270 (1988)).

Constructive possession arises out of an individual's conduct with regard to the subject item and is "a function of the relationship and conduct of the parties." Schmidt, 110 N.J. at 272. Immediate control and dominion over an object are not required; it must be shown a defendant had the capacity, by direct or indirect means, to gain almost immediate physical control, and the ability to affect the item during the time in question. Id. at 270-71; see also State v. Brown, 80 N.J. 587, 597 (1979) (finding constructive possession does not require "[p]hysical or manual control of the proscribed item . . . as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists").

"[C]onstructive possession[, however,] cannot be based on mere presence at the place where contraband is located." State v. Whyte, 265 N.J. Super. 518,

523 (App. Div. 1992), aff'd o.b., 133 N.J. 481, (1993). A court must consider "the totality of the circumstances, including defendant's presence at the location . . . as well as other factors before . . . an inference of constructive possession [may] be drawn." State v. Hurdle, 311 N.J. Super 89, 96 (App. Div. 1998).

We note that in State v. Williams, 315 N.J. Super 384, 396 (Law Div. 1998), the Law Division stated that in certain circumstances, "accomplice liability has no useful role to play in the context of the weapons offenses." It also stated, however, that "the propriety of an accomplice liability instruction for a simple possessory offense is fact-sensitive[,]" and should "not . . . be eschewed in all cases" but "should not be routinely given in all cases either." Ibid. It concluded that under the unique circumstances of that case, the accomplice liability charge was inappropriate "in addition to and apart from the liability which might result from constructive possession on the part of the non-weapon bearing [defendants]." Id. at 387-88. Thus, the Williams court did not preclude the possibility that a defendant could be found guilty of a possessory weapons offense under a theory of accomplice liability.

We also note that in Cook, the court made the following observation with respect to the relationship between accomplice liability and possessory weapons offenses:

> Whether accomplice liability even applies to a possessory weapons offense is doubtful. In such a case, the State must show that defendant possessed the weapon with a purpose to use it unlawfully. Possession may be actual or constructive and two or more persons may jointly share actual or constructive possession of a weapon. Once the jury is instructed as to these principles, which is what occurred here, the giving of an erroneous accomplice charge is, at most, harmless.

[300 N.J. Super. at 489-90 (citations omitted).]

The Cook court, however, did not directly answer the question of whether accomplice liability applied in the context of possessory weapons offenses. Instead, the court found that even an erroneous accomplice liability charge would have been harmless under those circumstances in light of the trial court's jury charge on constructive possession. Like in Cook, the jury here was charged with constructive possession in relation to defendant's weapons offenses.

Here, the sentencing judge stated that the weapons convictions were "based on accomplice evidence" and that there was "[c]ertainly enough evidence in the case to sustain the conviction of those charges as an accomplice[,]" but also noted that there was "no evidence that [defendant] had foreknowledge of his co-defendant's possession" and "a lack of evidence that he knew, prior to the commission of the offenses for which he's an accomplice, that there would be a gun involved." Similarly, on direct appeal we noted that there was "no evidence

that Johnson displayed his gun to [defendant] before or during the robbery . . . or that [defendant] had any knowledge that Johnson had a weapon." Cooper, slip op. at 11.

Based upon our review of the trial record along with our conscientious consideration of the comments of the sentencing court and those contained in our earlier opinion, we cannot discern the basis for appellate counsel's failure to challenge the weapons offenses. In this regard, we cannot determine on the current record if defendant's appellate counsel made a strategic decision not to appeal those convictions. Specifically, we cannot discern if appellate counsel concluded that such a challenge would have been unsuccessful due to trial counsel's failure to object to the jury charge on accomplice liability and constructive possession, or if counsel concluded that the circumstantial evidence supported the weapons convictions on one or both of those theories such that any challenge would be unsuccessful and would reasonably result in a potential adverse impact on defendant's appellate arguments related to the first-degree robbery conviction. In light of the Williams and Cook decisions, and the necessary elements to sustain a weapons offense under an accomplice liability or constructive possession theory as outlined above, we believe further

development of the record is required to understand appellate counsel's decision not to appeal those convictions.

Nor can we conclude on the present record that the result of the "proceedings would not have been different even if the issue had been raised" as the PCR court concluded. On this point, the PCR court reasoned that defendant failed to establish the prejudice prong because the weapons charges "do not contain lesser included offenses" and any challenge to the weapons convictions would have been unsuccessful as "the erroneous jury charge did not affect the outcome on those charges." The issue, as we have detailed with respect to the weapons offenses, was not the lack of a jury charge on non-existent lesser included offenses, but rather if, under the facts presented at trial, those offenses were legally sustainable and if a viable appellate issue existed. We are thus persuaded that defendant presented sufficient evidence to warrant an evidentiary hearing. Such a hearing will permit the development of a record from which the PCR court can more meaningfully determine whether appellate counsel's decision not to appeal the weapons offenses comports with reasonable professional assistance or was ineffective assistance that prejudiced defendant under the Strickland/Fritz test.

For similar reasons, we conclude an evidentiary hearing was required on defendant's ineffective assistance claim regarding his second trial counsel to permit a more fulsome record that reflects counsel's reasoning supporting the decision not to file an applicable motion in the trial court prior to the negotiated plea to address the weapons offenses, particularly in light of the comments in our opinion addressing defendant's direct appeal and the trial evidence. We cannot discern if this decision was the product of the plea negotiations or for some other reason.

VI.

In sum, we conclude that defendant established a prima facie case of ineffective assistance of his appellate counsel and second trial counsel that could not be resolved on the record before the PCR judge. We, therefore, reverse the judge's denial of defendant's petition and remand the matter for an evidentiary hearing on both claims. We nonetheless note that our decision to remand for an evidentiary hearing should not be understood as an expression of our opinion as to the merits of defendant's claim.

Reversed and remanded for an evidentiary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3641-18T1